JOHN T. DONNELLY *vs.* HOMER M. DAGGETT, JR.

Bristol. Oct. 25. — Nov. 23, 1887. C. ALLEN & KNOWLTON, JJ., absent.

In an action for malicious prosecution it appeared that the plaintiff had been arrested, on a complaint made by the defendant, for fraudulently concealing mortgaged property. At the trial, material facts were in dispute, and it did not appear that a full and correct statement of the facts as known to the defendant were made to his counsel. There was also evidence that the defendant believed, before making the complaint, that the property had been wrongfully removed by a third person. *Held*, that the defendant had no ground of exception to a refusal of the judge who presided at the trial to rule that whether or not there was probable cause was a question of law for the court, nor to his refusal to rule that there was no evidence of want of probable cause.

TORT, in two counts, for malicious prosecution.

The first count alleged that the defendant, at a term of the First District Court of Bristol, on December 2, 1885, falsely and maliciously, and without any reasonable or probable cause, procured the plaintiff to be complained against, for fraudulently removing and concealing certain personal property, on or about July 1, 1885, while a mortgage to the defendant was in force upon the same and unpaid.

The second count alleged that at the same term the defendant falsely and maliciously, and without any reasonable or probable cause, procured the plaintiff to be complained against, for conveying, on January 7, 1885, by mortgage to the defendant, certain personal property, he, the plaintiff, not being the owner of said personal property, but having hired or leased the same without the written consent of the owner or lessor, and without informing the defendant that it was so hired or leased.

Trial in the Superior Court, before *Barker*, J., who allowed a bill of exceptions, in substance as follows:

It appeared that on December 23, 1885, the said complaints were tried in the First District Court of Bristol at Attleborough; that, after a hearing, the court ordered the plaintiff to recognize in the sum of $300, on each of said complaints, for his appearance before the grand jury; that the grand jury found "no bills;" and that the plaintiff was discharged.

It was in evidence, and not contradicted, that the plaintiff by two mortgages, the first dated January 7, 1884, given for two months, and the second March 7, 1884, for one month, mortgaged to the defendant one New England organ, a rifle, a violin, and certain household furniture, all in North Attleborough, as security for two loans of $150 and of $80, which loans were at the time of making said complaints unpaid; that about the middle of July, 1885, while the plaintiff was in South Framingham, the furniture was taken away from his house; that the plaintiff told the defendant, before the complaints were made, that he understood the mortgaged furniture had been taken by the Providence Furniture Company.

The plaintiff testified that a portion of his furniture was bought of the Providence Furniture Company on a conditional sale, but denied that the mortgages included any of such portion.

It was in evidence, and uncontradicted, that the New England organ, the rifle, and the violin had disappeared before the making of said complaints, and that the defendant did not know where they were and was unable to find them; that the plaintiff knew where the rifle and the violin were; that the defendant demanded their return repeatedly before the complaints were made, but the plaintiff neglected to deliver them up or inform the defendant of their whereabouts until long after the criminal

complaints were made; but the plaintiff testified that he told the defendant that he had lent the rifle and the violin.

The plaintiff testified, that on July 20, 1885, he came home from South Framingham, went to his house, and found that everything had been taken from it, in his absence and without his knowledge or authority, and that he went at once to the defendant's office and told one Parker, the defendant's agent and servant, about it; that he next saw the defendant personally on August 15, 1885, when the defendant told him that he understood the goods were taken away, and the plaintiff told him it was so, and thereupon the defendant asked him to assign his claim against the Providence Furniture Company for taking away the goods to the defendant in settlement, so that he could sue the company in his own name; that he did not give him such an assignment, but did then give him another assignment of his wages, to be operative after an assignment to one Herrick, and that the defendant told him he was willing to wait until after Herrick got through; that he next had a conversation with the defendant in Thanksgiving week, 1885, when he offered him his services as a jeweller to work out the bill, the defendant being then in the jewelry business; that the defendant said he would not have him in the shop anyway, and that, if he did not go to his mother or try to raise the money, he would "jail" him; that he next saw the defendant two days before his arrest, when the defendant drew up a mortgage which he told him to get his mother and brother to sign, and that it was either that or jail; that on the day of the arrest the defendant asked him what he was going to do, and said he must furnish the money or go to jail; and that he did not furnish the money, and was arrested.

J. E. Pond, called by the defendant, testified that he was an attorney at law, and had practised law about fourteen years in Attleborough; that the defendant came to him as an attorney at law, with the two mortgages before mentioned, and told him he wanted him to collect those mortgages either by foreclosure and sale under the power contained in each, or by getting them from the party himself; that Pond gave the mortgages to deputy sheriff James W. Riley of North Attleborough to hunt up the property; that, from the report made by Riley, Pond told the defendant that the only course he could see was for him to bring a

criminal prosecution, in the manner and form in which the above mentioned complaints were made; and that he did not obtain any of the facts on which he based that advice from the defendant, except the fact that the mortgages were given; and that all that the defendant said to him with regard to the subject was the fact that those mortgages were given.

The defendant, to the question whether or not he had any facts within his knowledge with relation to this matter which were not stated to Pond, answered, "No, sir. In fact I got the most of my knowledge about this from Mr. Pond, from his report." To the question, "Were there any facts which you knew about this matter which were not brought out in your conversations with Mr. Pond, your attorney?" the defendant answered, "No, sir." To the question whether he told Pond the facts in this case, the defendant answered, "I told him he owed me these mortgages; I wished he would collect them." And to the question whether that was the only fact he laid before Mr. Pond, the defendant testified, "Perhaps I said to him I had heard the furniture had been taken away."

James W. Riley, called by the defendant, testified as follows: "Daggett and Pond called on me to look up some furniture that was mortgaged. I went to look after it, and saw Donnelly; he told me about this property that was mortgaged to Daggett, that Flint of Providence had come and taken it on a lease and carried it away. In a few days afterwards I had a warrant placed in my hands for his arrest. He was out of the State and I went to see his brother, and left word there for the plaintiff to come to my house. He came on Sunday night. I showed him the warrant, and told him what it was for. He said they came and took that property and carried it off. It was leased property. He supposed he could get the money for Daggett. When he mortgaged the property there, he expected to pay for it, but business had been dull, and he could not pay for it."

The plaintiff, in answer to the question whether he told Riley that the property that was mortgaged was the property of the Providence Furniture Company, testified as follows: "I did not have anything to say about the furniture. I was talking about the settlement with Daggett. That was all the conversation we had."

There was no other evidence in the case material to the question of probable cause.

At the close of the evidence, and before the arguments, the defendant requested the judge to rule, that the question whether or not there was probable cause on the facts proven was a question of law for the court, and to rule, as matter of law, that the evidence did not show want of probable cause.

The judge refused so to rule, but submitted to the jury the question whether, on the evidence, there was probable cause. The jury returned a verdict for the plaintiff; and the defendant alleged exceptions.

*W. H. Fox*, (*F. I. Babcock* with him,) for the defendant.

*A. E. Bragg*, for the plaintiff.

Field, J.   Whether there is probable cause for a prosecution is a question of law only when all the facts which are relevant are either agreed or are undisputed.   *Sartwell* v. *Parker*, 141 Mass. 405.   It is also a question of law whether there is sufficient evidence of a want of probable cause to sustain the burden of proof, which is on the plaintiff.   If a person fully lays before counsel learned in the law all the facts which he knows, and all the facts which he believes to be true and can be established by evidence, and he is advised by counsel that they constitute a legal cause for a prosecution, and he in good faith accepts this advice and follows it, he is not liable to an action for malicious prosecution.   *Olmstead* v. *Partridge*, 16 Gray, 381.

In the case at bar, material facts were in dispute, and it does not appear that a full and correct statement of the facts as known to the defendant was laid before counsel.   There was some evidence that the defendant believed that the Providence Furniture Company had wrongfully taken away the goods, because there was evidence that the defendant asked the plaintiff for an assignment of his cause of action against that company; and although this evidence was more directly pertinent to the question of malice, we cannot say that it had no tendency to show a want of probable cause.   *Mitchell* v. *Wall*, 111 Mass. 492.   *Bobsin* v. *Kingsbury*, 138 Mass. 538.   *Krulevitz* v. *Eastern Railroad*, 140 Mass. 573.   *Moyle* v. *Drake*, 141 Mass. 238.

*Exceptions overruled.*