SIMON J. CONNERY *vs.* JOSEPH A. MANNING.

Hampshire.   November 19, 1894. — January 28, 1895.

Present: FIELD, C. J., ALLEN, HOLMES, KNOWLTON, & BARKER, JJ.

*False Imprisonment — Malicious Prosecution — Written Statement of the Condition of One's Affairs — Question for Jury — Action under Advice of Counsel.*

In an action for false imprisonment and for malicious prosecution on a complaint for obtaining goods under false pretences, the pretence relied on being contained in the written statement as to the condition of his affairs, " Own real estate assessed on valuation of ? 5,000," made by the plaintiff to the defendant's firm, on the faith of which they sold the plaintiff goods, the question whether when he made the complaint the defendant believed that the plaintiff meant his written statement to be understood as it naturally would be understood, and as the defendant might be supposed to have understood it when he sold the plaintiff goods on the faith of it, or whether in consequence of what he had been told afterwards he believed that the plaintiff expected his statement to be understood as the plaintiff testified that he understood it, is a question of fact, and, if material under the circumstances of the case, should be submitted to the jury.

In an action for false imprisonment and for malicious prosecution, the alleged false imprisonment being an arrest upon the criminal complaint constituting the alleged malicious prosecution, it was argued that the defendant was not liable because he acted upon the advice of counsel; but whether a fair statement of the facts was laid before his lawyer by the defendant, and whether he was honestly following advice honestly asked, was in dispute, and it was not plain what the precise element of doubt was. *Held*, that the plaintiff was entitled to go to the jury, notwithstanding the advice.

TORT, for false imprisonment and for malicious prosecution. Trial in the Superior Court, before *Sherman*, J., who, at the defendant's request, directed the jury to render a verdict for the defendant; and the plaintiff alleged exceptions, the nature of which appears in the opinion.

*W. G. Bassett*, for the plaintiff.

*W. S. B. Hopkins & D. Manning*, for the defendant.

HOLMES, J.   This is an action for false imprisonment and for malicious prosecution, and the case comes before us on exceptions to a ruling of the judge directing a verdict for the defendant. The alleged false imprisonment was an arrest upon the criminal complaint constituting the alleged malicious prosecution. By all the testimony, the defendant did not authorize it, and it was made upon a lawful warrant duly issued.*  *Mullen* v. *Brown*, 138 Mass. 114.   *Coupal* v. *Ward*, 106 Mass. 289.   The exception to the ruling upon this part of the case is not much pressed.

The criminal complaint was for obtaining goods under false pretences, and the pretence relied on was contained in a written statement as to the condition of his affairs made by the present plaintiff, Connery, to the defendant Manning's firm, on the faith of which they sold the plaintiff goods.   It was as follows: " Own real estate assessed on valuation of ? 5,000."   In fact, Connery's real estate was assessed at $2,150.   If this were the whole case, no doubt the ruling would have been right.   But it is not the whole case.   It appeared that the land was mortgaged, as Connery stated in his answers, to a savings bank for $2,900; that the savings bank had its own appraisers; that they had appraised

---

* Both the defendant and his attorney testified that they asked to have the plaintiff summoned before the court, and that they did not direct that a warrant should issue for his arrest.

the land at $4,000; and that since that time, at least according to Connery's testimony, he had added improvements of from $1,000 to $1,200. Connery also testified that he thought the bank assessment was the assessment as well as the town assessment, and that he did not understand the question to call for a transcript from the town assessors' book. His attorney testified that Connery made similar statements to Manning, and told him that he thought the question meant to ask the present value of the property. Whether this story was probable or improbable, Dr. Seelye, the president of the savings bank, seems to have taken a somewhat similar view of Connery's state of mind, and to have communicated it to the defendant Manning before the criminal proceedings were begun. He testifies that Manning came to him to make inquiries, and that he told Manning that Connery was a worthy man; that he was not a business man at all, did not know how to do business, and did not know about the assessment valuation at all; that that was a great mystery to him; that he must have assessed the valuation of his property as he supposed the bank valuation was assessed; that he did not know that the property or real estate in the town was assessed by assessors appointed for that purpose; and that Connery was an innocent man.

It may be that the defendant had reason to believe the plaintiff less innocent than the president of the savings bank thought. But the foregoing testimony, coupled with the defendant's admission that probably he would not have instituted the prosecution if he had got his money, and his attorney's testimony that after the interview with Dr. Seelye he said there might be a mistake as to the assessed valuation, presents the question whether, when he made the complaint, the defendant believed that the plaintiff meant his written statement to be understood as it naturally would be understood, and as we may suppose the defendant to have understood it when he sold the plaintiff goods on the faith of it, or whether, in consequence of what he had been told afterwards, he believed that the plaintiff expected his statement to be understood as the plaintiff testified that he understood it. This is a pure question of fact, and, if material under the circumstances of the case, should have been submitted to the jury. *Bacon* v. *Towne*, 4 Cush. 217, 239. *Allen* v. *Codman*, 139 Mass.

136, 138.   *Sartwell* v. *Parker*, 141 Mass. 405, 406.   *Donnelly* v.
*Daggett*, 145 Mass. 314, 318.   *Broad* v. *Ham*, 5 Bing. N. C. 722,
725.   *Panton* v. *Williams*, 2 Q. B. 169, 194.

It might be suggested that the question was immaterial be-
cause Manning could have nothing more than an opinion about
Connery's intent and understanding, and his opinion did not
make it improper for him to take the judgment of the only tri-
bunal that could settle the question, inasmuch as on the facts
known to Manning there was a case for a jury against Con-
nery, and there is no ground for denying that he believed
and had good reason to believe that Connery might be con-
victed.   See *Allen* v. *Codman*, 139 Mass. 136, 138.   But the
answer to this suggestion is, that, if the jury in the present case
should find that Connery was honest and that Manning thought
he was, it would not be a defence that Manning reasonably
thought that there was a good chance for a conviction against
the truth.

It is argued that the defendant is not liable because he acted
upon the advice of counsel.   But whether a fair statement of the
facts was laid before his lawyer by Manning, and whether he
was honestly following advice honestly asked, seems to have
been disputed, and although it is not very plain what the pre-
cise element of doubt is, we cannot say that the plaintiff was not
entitled to go to the jury, notwithstanding the advice.   *Mona-
ghan* v. *Cox*, 155 Mass. 487, 489, 490.   *Donnelly* v. *Daggett*,
145 Mass. 314.

*Exceptions sustained.*