ALBERT B. BLACK vs. GEORGE B. BUCKINGHAM.

Middlesex.   November 14, 15, 1898. — July 3, 1899.

Present: FIELD, C. J., HOLMES, MORTON, LATHROP, & BARKER, JJ.

*Malicious Prosecution — Advice of Counsel — Evidence — Damages
— Instructions — Exceptions.*

If, in an action for malicious prosecution, the judge refuses to instruct the jury, as requested by the defendant, that if the defendant laid the facts before his counsel and acted entirely upon his legal advice, as to arresting or causing the arrest of the plaintiff, he is not liable, and instructs them that the defendant is responsible for the act of the attorney, the defendant has good ground of exception.

Evidence is incompetent, in an action for malicious prosecution, to show the fraudulent nature of a mortgage made by the plaintiff after he had been released from arrest.

No exception lies to the refusal to give an instruction in the language requested, if it is fully covered by the instructions given.

TORT, for malicious arrest.   Trial in the Superior Court, before *Lilley*, J., who allowed a bill of exceptions, in substance, as follows.

It appeared that the plaintiff was a manufacturer of snow-plows in Lexington, and the defendant, who was a manufacturer of malleable iron in Worcester, had several times made the iron parts for the plaintiff's machines ; and that before the time of the trial of this case the defendant had recovered judgment for the sum of $710.50 in an action in which this plaintiff was arrested, which sum was substantially less than the amount claimed by the plaintiff to be due him.

The defendant's evidence tended to show that the plaintiff had been given time for three years or more on his bill for iron parts of snow-plows ; that the plaintiff came to the defendant's place of business in Worcester on September 19, 1896, at about nine o'clock in the morning, and informed the defendant's bookkeeper that he had sold out his business in Lexington and was going West; that he would like to see the defendant and that he had so much money to give him to settle the account, and had not much time to talk about it; that the defendant was not in his office, and the bookkeeper telephoned to him at his home, repeating to him what the plaintiff had just said ; that

thereupon the defendant went to his counsel, related to him all the foregoing facts, and was informed by him that the plaintiff could be detained if he was going to leave the State without paying the account; that in the meantime the plaintiff had gone out of the defendant's office, but came back and waited for the defendant; that thereafter, at about ten o'clock on the same morning, the defendant went to his place of business and there found the plaintiff, who offered him $250 to settle his bill, and said that he had sold out his business and was going West, and that the defendant had better accept this, as it was more than he would otherwise get; that the defendant refused to accept this offer, and the plaintiff left the defendant's place of business; that thereupon the defendant's bookkeeper took the account against the plaintiff to the defendant's counsel, and stated to him what had just taken place between the plaintiff and the defendant, as above recited; that the attorney made out the proper papers for causing the arrest of the plaintiff upon mesne process, and made the necessary affidavit before a magistrate, without the presence of either the defendant, the bookkeeper, or any other person; that the attorney put the papers into the hands of a deputy sheriff, who arrested the plaintiff at the railroad station; and that the plaintiff was informed by the officer that he could go before a magistrate and recognize, or take the oath that he did not intend to leave the State, or he could settle the bill. The officer testified that he told the plaintiff that he was informed that the plaintiff was going to leave the State; and that the plaintiff replied that he had said he was going West, but that he meant the western part of the State.

It appeared that the plaintiff went with the officer to the office of the defendant, and had a further conversation about the bill, and then was taken, at his own request, to see counsel, and then to the telegraph office, where he sent a message to Stoneham, to get a surety to recognize for him, and then he was taken to the Central District Court of Worcester, where he was represented by counsel, to get a time fixed for a hearing, but the justice of that court was busy holding the session and did not appoint a time. There was evidence tending to show that the plaintiff could have given notice to the defendant or his attorney, both of whom were in town on that afternoon; that he could

have had notice issued by other magistrates than the one before
whom he was taken; that no effort was made to apply to
another magistrate, and the officer, having waited until five
o'clock in the afternoon for the surety, took the plaintiff to jail.
It appeared further that the surety arrived in Worcester that
same evening, but could not be admitted to the jail until noon
on the next day, Sunday, when the plaintiff was released; that
on the following day, September 21, 1896, at eight o'clock in
the morning, the plaintiff gave notice, returnable one hour from
that time, that he desired to take the oath that he did not in-
tend to leave the State; and that upon his statement that he
did not in fact intend to leave the State he was released.   The
defendant's evidence further tended to show that the plaintiff
testified before the magistrate that he meant the western part
of the State when he said he was going West.

The plaintiff denied that he said at any time he was going
West, and testified that he said he was going to Westborough,
and it was not denied that during the second interview with
the bookkeeper, before the defendant had come in, the plaintiff
said he was going to Westborough, nor that the bookkeeper ex-
amined the time-tables for trains going east from Worcester at
the plaintiff's request.   The plaintiff further testified that the
account between himself and the defendant was in dispute; that
he had several times prior to September 19 called upon and
written to the defendant about the settlement of the account;
and that the plaintiff, during most of the time between the
contraction of the debt and the arrest, had been in business in
Lexington and was the owner of considerable real and personal
property.

It appeared from the plaintiff's evidence that he had trans-
ferred his business at Lexington to a firm in Stoneham, which
was in the same business, and of which he became a member;
and that his personal property was mainly in the business of
such firm when he was arrested in Worcester.   The plaintiff,
on cross-examination, admitted that on September 21, the day
when he was released from arrest at Worcester, he mortgaged
all his real estate for its full assessed valuation.   The defendant
offered to show that the mortgage was not given for a present
consideration and was for a larger sum than the indebtedness

of the plaintiff to the mortgagee, for the purpose of showing that the mortgage was fraudulent. The judge, upon objection, excluded the evidence ; and the defendant excepted.

The defendant asked the judge to rule that if the defendant laid the facts before his counsel and acted entirely upon his legal advice as to arresting or causing the arrest of the plaintiff he was not liable in this action. The judge declined to make this ruling, but instructed the jury as follows : " The act of his [the defendant's] attorney would be his act, . . . that is, he had committed the matter to the hands of his counsel, and his counsel had implied authority from him to do all such things as in his discretion were necessary in the prosecution of the suit, and in the enforcement of the payment of that debt which had been left with him for collection. . . . The defendant as principal would be responsible for the acts of his agent and attorney in the transaction of his business, and if the affidavit for the arrest was made by the defendant's attorney, the defendant was liable in the same manner and to the same extent as if it were made by the defendant himself." The judge gave no further instructions upon this subject, but did instruct the jury that if the plaintiff made the statements to the bookkeeper and the defendant, which they testified to, and the jury believed that these statements gave the defendant reasonable cause to believe that the plaintiff intended to leave the State, then the defendant was justified in making the arrest, and the plaintiff could not recover. To the refusal to rule as requested the defendant excepted.

The defendant asked the judge to rule further that if the magistrate failed to act or was not asked by the plaintiff to act in giving him a hearing on Saturday afternoon, and the plaintiff was sent to jail because he did not find a magistrate, the defendant would not be liable for the damages resulting by reason of his failure to find the magistrate or to ask to be released upon taking the oath. The judge declined to give this ruling, but instructed the jury as follows : " And this leads me to say a word concerning one aspect of the case which has been commented upon in the argument. It is contended by the defendant that the plaintiff did not avail himself as he ought of the opportunities which were afforded him to secure his release

from arrest; and the claim of the defendant, as I understand it, is, that he ought not to be called upon to pay damages for so much of, or that part of, the plaintiff's imprisonment which was due to his own failure to avail himself of such opportunities as were presented to him to secure his release from arrest. If the plaintiff was fully informed of his rights and given an opportunity to apply to a magistrate to take the oath before him that he did not intend to leave the State, and if he unreasonably neglected to avail himself of such opportunity, then for so much of his detention as was due to his own neglect the defendant in this action is not responsible. But it is for you to say, upon the evidence in the case, whether he did unreasonably neglect to avail himself of any of the opportunities that were afforded him, and furthermore, whether any opportunities were afforded him, to apply to a magistrate to take the oath to which reference has been made." To this ruling and refusal to rule the defendant excepted. Upon this subject the judge further instructed the jury as follows: "It is for you to say whether anything more was incumbent upon the plaintiff than he did, whether he did all that could reasonably be required and expected of him. . . . If there was no neglect upon the part of the plaintiff then the defendant, if he is liable in this action, is responsible in damages for all the injuries which were sustained by the plaintiff as the consequences of this illegal arrest."

The jury returned a verdict for the plaintiff; and the defendant alleged exceptions.

*W. S. B. Hopkins,* (*C. T. Tatman* with him,) for the defendant.

*S. J. Elder,* (*J. A. Bailey, Jr.* with him,) for the plaintiff.

LATHROP, J. While this action is called in the bill of exceptions an action for malicious arrest, it is properly speaking an action for malicious prosecution. The plaintiff was duly arrested on a writ issued by a court having jurisdiction of the cause of action and of the parties. See cases cited in *Jackson* v. *Knowlton,* 173 Mass. 94. The burden of proof was on the plaintiff to prove that at the time the defendant procured the arrest he had no probable cause to believe that the plaintiff intended to leave the State. *Legallee* v. *Blaisdell,* 134 Mass. 473.

The principal question in the case is as to the refusal of the

judge to instruct the jury, as requested by the defendant, that if the defendant laid the facts before his counsel and acted entirely upon his legal advice as to arresting or causing the arrest of the plaintiff, he was not liable. This states in a somewhat abbreviated form the rule which has long existed in this Commonwealth. *Stone* v. *Swift*, 4 Pick. 389, 393. *Wills* v. *Noyes*, 12 Pick. 324, 327. *Olmstead* v. *Partridge*, 16 Gray, 381, 383. *Folger* v. *Washburn*, 137 Mass. 60. *Allen* v. *Codman*, 139 Mass. 136, 138. *Donnelly* v. *Daggett*, 145 Mass. 314, 318. *Monaghan* v. *Cox*, 155 Mass. 487, and cases cited. *Connery* v. *Manning*, 163 Mass. 44. Of course to make the advice of counsel a defence the person consulting him must act in good faith, and he must make a full and honest disclosure of all the material facts within his knowledge and belief. If the judge had added these elements to the request, the defendant would have had no ground of exception, but it seems to us that it would be too narrow and technical a view to hold that this exception must be overruled because these elements were not added. The attention of the judge was called to the substantive defence of advice of counsel, and he should have given appropriate instructions upon the subject.

To refuse the instruction requested, and to instruct the jury that the defendant was responsible for the act of the attorney, would not be an instruction on the effect of the advice of counsel, and would tend to mislead the jury.

The bill of exceptions further states: " The judge gave no further instructions upon the subject, but did instruct the jury that if the plaintiff made the statements to the bookkeeper and the defendant, which they testified to, and the jury believed that these statements gave the defendant reasonable cause to believe that the plaintiff intended to leave the State, then the defendant was justified in making the arrest, and the plaintiff could not recover."

It would seem from this statement that the judge did not intend this to apply to the request made by the defendant's counsel for a ruling as to the effect of the advice of counsel; and the statement says nothing about such effect. We do not see any ground for holding that the instructions given rendered the request immaterial.

The error of the judge in the court below seems to have been founded on the theory that the present action was not one for malicious prosecution ; but an examination of the cases above referred to shows that it was.

The other exceptions we are of opinion should be overruled.

The judge rightly excluded the evidence relating to the transaction of September 21. This was after the plaintiff had been released from arrest ; and had no bearing upon the issue in the case.

The request as to the rule of damages was fully covered by the instructions given.        *Exceptions sustained.*