### WILBUR F. MORRISON *vs.* CITY OF LAWRENCE.

Essex. November 7, 1901. — April 1, 1902.

Present: HOLMES, C. J., KNOWLTON, MORTON, LATHROP, BARKER, HAMMOND, & LORING, JJ.

*Schools and School Committee. Damages.*

In an action against a city for the alleged unlawful exclusion of the plaintiff from its public schools, a record of the school committee was put in evidence which stated that the plaintiff had had an opportunity to be heard on the charges against him. Oral evidence was introduced as to the proceedings at the hearing. In holding that the finding of the school committee made in good faith after a hearing could not be revised, the court assumed that the plaintiff was

not precluded by the record from showing the proceedings at the hearing so far as they were pertinent.

In an action against a city under Pub. Sts. c. 47, § 12, St. 1898, c. 496, § 9, for the alleged unlawful exclusion of the plaintiff from its public schools, it appeared, that there was a hearing, at which the school committee refused to permit pupils of a school to be called as witnesses to testify in regard to a question between the principal of the school and one of the pupils, although the principal had read a statement in which he referred to these same pupils as the source of part of his information. The chairman then said, that if any boy wished to volunteer a statement or to contradict anything said of him by the principal, he might do so. No boy volunteered. It was admitted that the school committee acted in good faith. *Held*, that it was error to leave the question to the jury whether the school committee gave the plaintiff a fair, reasonable opportunity to present his case before them, and that a verdict should have been ordered for the defendant. LATHROP, J. dissenting.

In an action against a city for the unlawful exclusion of the plaintiff from its public schools, the plaintiff cannot recover for expenses of tuition elsewhere unless paid out of his own property or funds, but may recover for suffering from the disgrace of his exclusion from school.

TORT for the alleged unlawful exclusion of the plaintiff from the public schools of the defendant. Writ dated April 13, 1900.

At the trial in the Superior Court before *Bell*, J., a record of the school committee was put in evidence which stated that the plaintiff had had an opportunity to be heard on the charges against him. It appeared that the plaintiff's father was notified that a hearing would be granted, and a meeting of the school committee was called for the purpose of giving a hearing on April 10, 1900. The plaintiff, with his father and mother, appeared before the school committee, and they were represented by counsel. The principal of the school also was represented by counsel.

At the opening of the hearing the principal read a written statement of what he contended to be the facts in the case and was cross-examined by the attorney for the plaintiff. The statement of the principal named a number of boys, pupils at the school, as persons from whom he got some of his information as to part of the plaintiff's alleged misconduct. The counsel for the principal then read a written indorsement of the principal, signed by the other teachers in the school, which was prepared by the sub-master of the school. This was all the evidence offered to support the charges.

The counsel for the boy, after examining the sub-master with reference to the indorsement of the principal and the boy's pro-

ficiency in his studies, called as a witness one of the boys referred to in the principal's statement as authority for the accusation. The boy came forward for examination, but the chairman of the board interposed, and said that unless the board overruled him, he should not allow any pupil to be examined on a question between the principal and a student. Thereupon the counsel for the boy stated that the only evidence he had was the testimony of the accused and his fellow-students, some of whom had been referred to in the statement of the principal, that he proposed to call as witnesses all the boys who had been referred to by the principal as authority for the accusation, and if he was not permitted to call them he could go no further. The chairman then said, that if any boy wished to volunteer a statement on the matter or contradict anything said of him by the principal he might do so. None of the boys volunteered any testimony.

The school committee then voted to sustain the action of the principal in suspending the plaintiff, and that the plaintiff be formally given leave to withdraw from the school. The boy did not withdraw, and was not allowed to attend the school.

At the conclusion of the evidence the defendant moved that the case be taken from the jury and judgment given for the defendant, on the grounds, that the records of the school committee were conclusive on the facts of the hearing and showed that the plaintiff had had an opportunity to be heard, and that parol evidence was inadmissible to vary, contradict, or add to the record of the school committee.

The judge refused to take the case from the jury or to rule upon the sufficiency of the hearing, but, subject to the defendant's exception, instructed the jury that the question was: Did the school committee give the boy a fair, reasonable opportunity to present his case before them? If they did, the jury were to go no further. If they did not, the city was liable.

The defendant submitted to the judge two requests for rulings on the question of damages, which were refused by the judge. These are stated by the court, and are called the fourth and fifth requests, there having been three preceding requests upon which the judge gave the rulings requested.

On the question of damages the judge instructed the jury as

follows: "The question is what damages the exclusion of the boy from school has reasonably caused him. Upon that you may consider any expense he may have been put to to obtain an equivalent education so far as has been proved. You may consider any indignity or disgrace which follows from the public exclusion of a boy from school. I think no other elements have been considered."

The jury returned a verdict for the plaintiff, in the sum of $471.70, and the judge, with the consent of the parties, reported the case for the consideration of this court. If the rulings and instructions of the judge were correct, judgment was to be entered on the verdict. If the rulings and instructions on the question of liability were correct, and those on damages were erroneous, a new trial was to be granted on the question of damages. If the rulings and instructions on the question of liability were erroneous, the verdict was to be set aside and a new trial granted, or such other order was to be made as justice and equity might require.

The case was argued at the bar in November, 1901, and afterwards was submitted on briefs to all the justices.

*J. P. Kane*, for the defendant.

*J. P. Sweeney*, for the plaintiff.

KNOWLTON, J.  This is an action brought under the Pub. Sts. c. 47, § 12, St. 1898, c. 496, § 9, (R. L. c. 44, § 7,) to recover damages for an unlawful exclusion of the plaintiff from a public school. In *Spear* v. *Cummings*, 23 Pick. 224, it was held that a teacher of a town school is not liable to an action by a parent for refusing to instruct his child, and in the opinion, which discusses our school system and the powers and duties of school committees in cities and towns, it was said that if the committee should refuse to permit a pupil to attend a school, it would be assumed that there was a good and sufficient cause for his rejection, inasmuch as the law will not presume that the committee would act arbitrarily and unjustly. It was therefore said that the pupil in such a case would be without remedy. Afterwards the St. 1845, c. 214, was enacted, which is still retained in our law without material change, giving a remedy to a child "unlawfully excluded" from a public school. This legislation makes cities and towns liable for the possible arbi-

trary and wilfully unjust action of a school committee in exclud-
ing a child from a school, but it does not otherwise change the
powers and duties of committees, or their general relations to
the schools.   They still have the general charge and super-
intendence of all the public schools, and as public officers, so far
as the performance of their duties involves the exercise of judg-
ment and discretion, they are accountable to no higher authority.
Pub. Sts. c. 44, § 21.   R. L. c. 42, § 27.   The statute under which
this suit is brought says impliedly that there may be an exclu-
sion of a pupil which is unlawful, but it does not define the
illegality referred to.   In *Bishop* v. *Rowley*, 165 Mass. 460,
which is the only case decided by this court in which there has
been a recovery for an unlawful exclusion, it was said in con-
struing the statute, that " the power of exclusion is not a
merely arbitrary power, to be exercised without ascertaining the
facts. . . . The school committee should have given the plaintiff
or his father a chance to be heard upon the facts, or, in other
words, should have listened to his side of the case."   But it was
also said, following previous decisions of this court, that " if a
school committee acts in good faith in determining the facts in
a particular case, its decision cannot be revised by the courts."
See *Watson* v. *Cambridge*, 157 Mass. 561.

The decision in *Bishop* v. *Rowley*, rests upon a construction
of the bill of exceptions whereby the school committee were
understood to have arbitrarily refused to give the plaintiff and
his father a hearing upon request in regard to the facts upon
which his exclusion from the school was founded.   In the pres-
ent case a hearing was had, and the only objection to it is that
the school committee refused to permit pupils of the school to be
compelled to give testimony in regard to matters between them-
selves and the teacher and the plaintiff, although ready to re-
ceive testimony from any of them who would testify voluntarily.
This was, at most, an error in regard to the admission of evi-
dence.   It may or may not have had an important bearing upon
the hearing, but it has not been contended that the committee
were acting otherwise than in good faith.   Doubtless they be-
lieved that a compulsory examination of the pupils in regard to
matters which they probably considered confidential, would be
detrimental to the interests of the school.   The decision in

*Bishop* v. *Rowley* does not go so far as to hold that a hearing in regard to the exclusion of a pupil from a school must be conducted with all the formalities of a trial in a court, or that a material mistake, innocently made by a school committee in conducting a hearing, will make his exclusion unlawful. So to hold would be inconsistent with the previous decisions of the court, as well as with some of the language of that case. We are therefore of opinion that there was error in the instructions on the question of liability.

We have assumed without discussion that the plaintiff was not precluded by the record from showing the proceedings at the hearing so far as they were pertinent. See *Alvord* v. *Chester*, 180 Mass. 20; *Russell* v. *Lynnfield*, 116 Mass. 365, 367.

On the question of damages the defendant presented requests for instructions as follows: " 4. That the plaintiff is not entitled to recover for the cost of his board, instruction or tuition paid at the school which he has attended since his exclusion from the Lawrence public schools, unless he had shown that he has paid for his board, instruction, or tuition out of his own property or funds. That there being no evidence of that fact, this element of damages is not to be considered by the jury. 5. That the only element of damages is that of being unlawfully prevented from enjoying the benefit of instruction therein, and no compensation is to be allowed for injury to his feelings or his standing in the community as a result of his exclusion." The report shows that the only evidence in relation to damages was the fact of exclusion from the school, with the further fact that the plaintiff did not go to school for the remainder of the school year, but at the beginning of the next school year, after the bringing of this action, went to an academy in New Hampshire. There is nothing in the report to show that the boy had any estate of his own, or that he paid anything for his board or his tuition elsewhere. It appears that he had a father whose duty it was to provide for his wants. We are of opinion that the fourth request for instructions should have been granted, and that the fifth request was properly refused.      *New trial ordered.*

LATHROP, J. I am not able to concur in the opinion of the majority of the court, that, upon the facts in this case, the only

thing to be considered on the question of liability is whether the school committee acted in good faith. It doubtless has been said in many cases that the school committee must act in good faith, and in one case and one only has good faith been adopted as the criterion. *Watson* v. *Cambridge*, 157 Mass. 561. But in that case and in all the cases that have arisen this court has been particular to point out that by the evidence the pupil was properly excluded.

It is not perhaps to be expected that a school committee should in all respects be bound by the rules of evidence which prevail in courts of law, or that a court should for a mere error in the admission or exclusion of evidence revise the proceedings of the school committee, but I venture to think that where substantial justice is not done by the school committee, the court should interfere and see that substantial justice is done. See *Haven* v. *County Commissioners*, 155 Mass. 467.

In the present case the plaintiff was accused by the principal of the school of inciting other pupils to write articles for a local newspaper, criticising the principal. The pupil denied the accusation ; but the principal persisted in his accusation ; and the pupil was finally expelled from school. A hearing before the school committee was asked for and granted. At the hearing the principal read a written statement of what he contended were the facts in the case, and this statement named a number of boys from whom he got some of his information. The principal was also allowed to read a written indorsement of himself, signed by the other teachers in the school, and prepared by a sub-master. The counsel for the plaintiff then called as a witness one of the boys referred to in the principal's statement as authority for the accusation. The chairman of the board said that, unless he was overruled, he would not allow any pupil to be examined on a question between the principal and a student. The counsel for the boy stated that the only evidence he had was the testimony of the accused and his fellow students, some of whom had been referred to in the statement of the principal, and that he proposed to call every boy therein named. The chairman then said that if any boy wished to volunteer a statement, or to contradict anything said of him, he might do so. No one volunteered to say anything ; and the board then voted to sustain the principal.

It is manifest that no hearing was had in any true sense of the word. The boy was not shown to be guilty of any offence whatever. The evidence against him was purely hearsay evidence; and under an absurd ruling of the presiding officer of the school committee he was prevented from putting in his defence. His fellow pupils could not be expected to volunteer testimony in his favor, for if they did they too might be expelled in as summary a manner as he was. It is difficult to imagine a more arbitrary and unfair hearing than was given this boy; and in my opinion the judge properly left to the jury the question whether the plaintiff had had a fair trial. If he had not had such a trial, then I think his exclusion was, in the language of the statute, " unlawful." St. 1898, c. 496, § 9. To hold otherwise seems to me to allow the school committee to exclude a pupil at their caprice, and to render of no effect the salutary provisions of the statute giving a right of action.