CHARLES W. SQUIRES *vs.* WASON MANUFACTURING
COMPANY.

Hampden.    September 29, 1902. — October 29, 1902.

Present: HOLMES, C. J., MORTON, LATHROP, BARKER, & LORING, JJ.

*Contract*, Validity.  *Libel*, Privileged Communications.

Where an inventor holding a patent has sold and granted to a manufacturer an exclusive license to make, use and sell a certain switch operating mechanism during the full term of the patent, there is nothing contrary to public policy in a covenant by the inventor that, in case he devises any further improvements in switch operating mechanisms generally, he shall disclose the devices to the manufacturer and on his request shall grant to him a like exclusive license to make, use and sell them, without further consideration except such sum as shall be expended for patenting such further improvements.

If, in answer to a letter of inquiry concerning a patented device of which the writer is contemplating the purchase from the inventor, a manufacturer replies that he owns the right to the manufacture and sale of the device and "shall be pleased to consider an offer for the sale" of the right, and it appears that the manufacturer has a reasonable ground for his assertion of ownership and there is nothing to show that he does not believe it or that it is made for any other than business reasons, such a statement is privileged although the inventor by reason of it loses the opportunity to sell his device to the inquiring purchaser.

Discussion by HOLMES, C. J. of malice in cases of privilege.

TORT by the owner of letters patent covering certain improvements in switch operating mechanism, for alleged false and malicious libel of the plaintiff's title, by reason of which an offer of certain persons to purchase the patent from the plaintiff was withdrawn.    Writ dated September 26, 1900.

In the Superior Court *Maynard*, J. ruled that the plaintiff could not recover, and ordered a verdict for the defendant; and the plaintiff alleged exceptions.

*E. H. Young*, for the plaintiff.

*J. B. Carroll & W. H. McClintock*, for the defendant.

HOLMES, C. J.    This is an action for an alleged malicious libel on the plaintiff's title under patents for an electric switch, by reason of which certain persons who were in treaty with him for a purchase of an interest in it withdrew and refused to deal with him further.    The facts necessary to be stated are few. The plaintiff having a patent, earlier than those referred to, for a switch operating mechanism, had granted to the defendant an

exclusive license to make, use and sell the mechanism throughout the United States, and covenanted, in case he devised "further improvements in Switch Operating Mechanism for Railway Cars," to disclose the same to the defendant, and on its request to grant a like exclusive license to make, use and sell the same, without further consideration, except such sum "as shall be necessarily expended for patenting such further improvements in Switch Operating Mechanisms in the United States." The parties who were bargaining with the plaintiff caused a letter to be written to the defendant by the superintendent of an electric railway, stating that a device had been placed on one of the railway's switches "with a view of selling, provided it proves satisfactory," and that the defendant was said to be interested " in the device which is patented by a Mr. Squires, of Springfield," and asking for an answer. The defendant replied : " The Wason Mfg. Co. own the right to the manufacture and sale of the Squires' Electric Switch. We shall be pleased to consider an offer for the sale of said right." This is the libel complained of. At the close of the evidence the judge directed a verdict for the defendant and the plaintiff excepted.

We assume for purposes of decision that the defendant understood itself to be writing about the switch mentioned in the declaration, a different switch from that covered by its express license, although whether it did so or was bound to do so perhaps may be doubted. Also we assume that the defendant might be answerable for the communication of the letter to the possible purchasers, by the railway superintendent to whom it was addressed, within the principle of *Elmer* v. *Fessenden*, 151 Mass. 359, 362, 363.

We have stated the plaintiff's special damage as it appears on the evidence. *Swan* v. *Tappan*, 5 Cush. 104. *Lowe* v. *Harewood*, W. Jones, 196. It will be seen to consist in the withdrawal of an offer, or breaking off of negotiations that might never have ended in a sale even if the letter had not been written. No doubt the plaintiff would not be prevented from recovering merely by the fact that the third persons were not bound to the plaintiff and that therefore the act induced by the defendant was lawful. *Moran* v. *Dunphy*, 177 Mass. 485, 487. But it might be questioned perhaps, whether the plaintiff must not

go so far as at least to make it reasonably probable that but for the defendant's conduct a sale or contract would have been made. See *Dicks* v. *Brooks*, 15 Ch. D. 22, 40. Nevertheless, we assume that the jury would have been warranted in inferring facts sufficient to satisfy the law, whatever it may be. But upon all these assumptions we think it plain that the ruling of the court below was right.

We do not propose to determine the validity of the defendant's claim. It is enough to say that it was a reasonable one and one which the defendant had a right to try if it saw fit, and therefore was privileged to assert. *Wren* v. *Weild*, L. R. 4 Q. B. 730. *Steward* v. *Young*, L. R. 5 C. P. 122. *Halsey* v. *Brotherhood*, 19 Ch. D. 386. *Gassett* v. *Gilbert*, 6 Gray, 94, 97. It is true that the license refers to " the Switch Operating Mechanism for Railways described " etc., and that the covenant refers to " further improvements in Switch Operating Mechanism for Railway Cars," using capitals, which might give some color to the contention that the latter words were used as a proper name to describe the former invention and that therefore the improvements were improvements only in that. But the words are not a proper name and are not preceded by the definite article as they had been before, and in the same paragraph, later, the word " Mechanisms " is used, in the plural, thus giving additional strength to the argument that the improvements meant were improvements in switch operating mechanisms generally. The plaintiff seems to have assumed this to be the meaning until he broke with the defendant. If the covenant had the meaning last supposed, we perceive no objection to it in point of law, on grounds of public policy, as being too broad or smacking too strongly of slavery. It was no broader than was necessary to guard against the chance of the first invention being made useless and unmerchantable by a later one. *Aspinwall Manuf. Co.* v. *Gill*, 32 Fed. Rep. 697, 700. This consideration is a further ground in favor of the plaintiff's claim.

It is said that in any event the defendant did not own the right which it asserted. For purposes of decision, we assume that the defendant had not done enough to be entitled to the present execution of a further instrument applying to the present patent, or to bring into play the principle now governing antici-

patory assignments. *Smith* v. *Edwards*, 156 Mass. 221, 222. Therefore we assume not only that it did not own the patent but that it did not own in a strict sense even the equitable right to the manufacture and sale of the switch. But if it had reasonable ground to assert that its rights under the contract extended to that switch the language employed was sufficiently accurate for business purposes to convey that assertion. It would be absurd to make the defendant's liability depend on whether their contract did or did not operate as itself a conveyance or exclusive license, if it fairly might be supposed to give a right which would end in such a license when carried out. Although we now are endeavoring only to show that the defendant had reasonable grounds for its claim, we may add here that for the foregoing reasons the letter could not be found to be in excess of the privilege because of excess in its claim.

Finally it is said that the license had been revoked for breach of its terms by the defendant, but it was open to argument, if not clear, that the defendant had neglected no duty and that the license, which was for the full term of the patent, was irrevocable. *Kelly* v. *Porter*, 8 Sawyer, 482, 486, 487; *S. C.* 17 Fed. Rep. 519, 522.

We repeat then that the defendant had reasonable ground to assert the right which it set up in its letter, and a privilege to assert it. And this being so, the only question remaining is whether there was any extrinsic evidence of malice or that the defendant exceeded its privilege. A case like this might open an interesting inquiry. If there were evidence that the defendant did not believe its claim to be valid, still it might be argued that, if it was assured by counsel or if the court should think in fact, as we do, that it had a reasonable chance of success on any state of facts that it believed to be true or a jury to be warranted in finding, it reasonably had a right to assert its claim. It might be argued that the defendant had a right to disregard its own judgment of what the law ought to be. *Allen* v. *Codman*, 139 Mass. 136, 138. *Connery* v. *Manning*, 163 Mass. 44, 47. Whether an actually malevolent motive, as distinguished from self interest, would make a difference, would be a further question. The extent of a privilege depends on the nature of the particular case. At one extreme are the absolute rights regardless of motive, recognized

in the case of land, which possibly might be extended to other cases where there is a pecuniary interest, at the other malevolent persuasions without such interest, such as are spoken of in *Moran* v. *Dunphy*, 177 Mass. 485, 487.

But these are speculations. In the case at bar, not only did the defendant have reasonable ground for its assertion but there is no evidence that it did not believe it or that it made it for any other than business reasons. Assuming, as we do for purposes of decision, that Pearson, the defendant's superintendent, had authority to represent it in all that he did, what he did and said showed that he did not believe that the plaintiff had a useful invention and that at the same time he constantly asserted the company's rights to any invention which the plaintiff might make. It showed nothing more. See *Spill* v. *Maule*, L. R. 4 Ex. 232. This would not warrant a jury in finding that his motive was a wish to harm the plaintiff rather than an intent to benefit the defendant. There is no ground even to suspect such a thing. If proof of a malevolent motive would rebut the privilege, which we do not decide, nothing less than that would do, so far as malice is concerned. It is true, as is said in the very careful brief for the plaintiff, that in most connections malice means only knowledge of facts sufficient to show that the contemplated act is very likely to have injurious consequences. Apart from statute it generally means no more when the question is what is sufficient prima facie to charge a defendant. *Burt* v. *Advertiser Newspaper Co.* 154 Mass. 238, 245. But sometimes the defence is not that the damage was not to be foreseen, but rests on what in substance is a privilege, whether of a kind usually pleaded as such or not, that is to say, on a right to inflict the damage even knowingly. In such cases, if malice in any sense makes a difference, as distinguished from excess over what was reasonable or needful to do or say under the circumstances, which often is included under the same word, *Gott* v. *Pulsifer*, 122 Mass. 235, 239, it means that the defendant is not within the privilege because he was not acting in bona fide answer to the needs of the occasion, but outside of it from a wish to do harm. See *Wren* v. *Weild*, L. R. 4 Q. B. 730, 735, 736; *Clark* v. *Molyneux*, 3 Q. B. D. 237, 246, 247.

*Exceptions overruled.*