## WILBUR F. MORRISON *vs.* CITY OF LAWRENCE.

Essex. March 9, 1904. — October 18, 1904.

Present: KNOWLTON, C. J., MORTON, LATHROP, BARKER, HAMMOND, LORING, & BRALEY, JJ.

*Schools and School Committee. Evidence,* Competency, Of intent. *Practice, Civil,* Exceptions.

In an action against a city for the alleged unlawful exclusion of the plaintiff from its public schools, the plaintiff may testify to what was said by the principal of the school from which he was excluded to the superintendent of schools, when the principal took the plaintiff before the superintendent, the interview resulting in the superintendent informing the plaintiff that he was suspended, although neither the superintendent nor the principal are parties to the action, it being a part of the plaintiff's case to show that he did not leave school voluntarily and' to show the character of his exclusion, especially where the principal himself on cross-examination as a witness at the trial has given a narration of the proceedings before the superintendent.

No exception lies to the admission of evidence afterwards introduced in another form without objection from the excepting party.

In an action against a city under St. 1898, c. 496, § 9, (R. L. c. 44, § 7,) for the

alleged unlawful exclusion of a pupil from its public schools, if it appears that before the pupil's permanent exclusion the school committee gave him a fair trial at which he was allowed to present the merits of his cause, mere errors in the admission or exclusion of evidence by the committee are not enough to invalidate a final decision against him, but if it appears that evidence, offered by the pupil and material to his defence before the committee, was excluded in such a manner as to exhibit prejudice against the pupil or a wilful indifference to his rights, a jury may find that the school committee did not conduct the hearing in good faith. On the evidence in the present case it was held, that the question, whether the school committee acted in good faith in conducting the hearing given to the plaintiff before his permanent exclusion, was a question of fact for the jury under proper instructions from the presiding judge.

TORT for the alleged unlawful exclusion of the plaintiff from the public schools of the defendant. Writ dated April 13, 1900.

At the first trial of this case the jury returned a verdict for the plaintiff. Exceptions alleged by the defendant were sustained and a new trial was ordered by this court in a decision reported in 181 Mass. 127. At the new trial before *Wait*, J., the defendant excepted to the admission of the testimony of the plaintiff as to what was said by the principal of the school from which the plaintiff was excluded to the superintendent of schools, when the principal took the plaintiff before the superintendent, the interview resulting in the superintendent informing the plaintiff that he was suspended. At the close of the evidence, the defendant requested the judge to rule, that upon the facts shown by the evidence, there being no dispute as to what took place before the school committee, the question of good faith on the part of the school committee was a question of law, which should be decided by the judge and should not be submitted to the jury, and that upon all the evidence the defendant was entitled to a verdict. The judge refused to rule as requested, and submitted to the jury, under instructions that were not otherwise objected to, the question whether or not the school committee acted in good faith.

The jury returned a verdict for the plaintiff in the sum of $750; and the defendant alleged exceptions.

The case was argued at the bar in March, 1904, before *Knowlton*, C. J., *Morton*, *Lathrop*, *Loring*, & *Braley*, JJ., and afterwards was submitted on briefs to all the justices.

*J. P. Kane*, for the defendant.

*J. P. Sweeney*, for the plaintiff.

BRALEY, J.   This is an action of tort to recover damages for the wrongful exclusion of the plaintiff from the high school maintained by the defendant, and the plaintiff having obtained a verdict, the case is here on exceptions taken by the defendant to the admission of evidence, and to adverse rulings as to its liability.   If these are taken up in their order, the exception to the admission of certain evidence is to be first considered.

It was obligatory on the plaintiff to show that he did not voluntarily leave school.   For this purpose it was open to him to prove that he left because suspended by the superintendent of schools, and that his suspension, which was confirmed by the committee, had followed immediately upon a statement made in his presence by the principal of the school who had taken him for this purpose before the superintendent.   It also became important to describe the character or show the object of the act which formed a part of the transaction in issue, and what was said at the time became admissible, although neither the superintendent nor the principal were parties to the action.   *Haynes* v. *Rutter*, 24 Pick. 242, 245.   *Lund* v. *Tyngsborough*, 9 Cush. 36, 42.

Besides, after the plaintiff had testified, the statement containing the charges then made, and afterwards repeated before the committee by the principal, who became a witness at the trial, was admitted without objection, and the defendant fails to show that it was prejudiced by the introduction of evidence, which it contended at one time was irrelevant and which afterwards when introduced in another form it did not oppose, though covering the same subject.   *Peebles* v. *Boston & Albany Railroad*, 112 Mass. 498.   Moreover, it is shown by the exceptions that the principal had been the plaintiff's accuser from the beginning, and his cross-examination as to what he had said and done concerning the plaintiff, including a narration of the proceedings before the superintendent, was competent in connection with the issue presented as indicating the nature of the relations between them, and it would be for the jury to determine how far, if at all, it affected his credit as a witness.   *Commonwealth* v. *Jennings*, 107 Mass. 488, 491.   See also *Proprietors of Liverpool Wharf* v. *Prescott*, 4 Allen 22.

The remaining exception to the refusal to rule that upon all

the evidence there was no issue of fact for the consideration of the jury, and the defendant was entitled to a verdict, present the principal questions raised and argued. It must be taken as settled in the management of the public schools, that when a school committee acts in good faith while exercising the plenary powers conferred upon them by statute, and order the permanent exclusion of a scholar therefrom, no suit can be maintained by him because of their action. *Watson* v. *Cambridge,* 157 Mass. 561, 563. *Bishop* v. *Rowley,* 165 Mass. 460, 462.

But before such an order can be considered final, under St. 1898, c. 496, § 9, in force at this time, the pupil if his parent or guardian desires must be granted a hearing; otherwise such exclusion becomes unlawful. *Bishop* v. *Rowley, ubi supra.* See also in this connection R. L. c. 44, § 8. And it was said in the former decision of this case, when discussing the action of the committee which, it was then claimed, prevented the plaintiff from introducing evidence of certain witnesses at such a hearing held for the purpose of ascertaining the facts, that "It may or may not have had an important bearing upon the hearing, but it has not been contended that the committee were acting otherwise than in good faith," and the verdict for the plaintiff was set aside and a new trial ordered. *Morrison* v. *Lawrence,* 181 Mass. 127, 131.

At the second trial the plaintiff rested his right to recover solely on the ground that after notice of his exclusion from school, though the committee granted to him an opportunity to be heard, they did not act in good faith because they refused to allow him fully to present his side of the case, and he contends that their action was equivalent to a denial of a hearing, and his exclusion which was treated by them as final became unlawful. It is therefore necessary to determine whether there was any evidence to be submitted to the jury in support of his contention.

A hearing of this nature does not take on all the formalities of a trial usual in a court of law, nor is it necessarily governed by the strict rules of evidence, and a school committee is apparently not included among those special tribunals which have power to summon or compel the attendance of witnesses, or before whom witnesses may be compelled to attend and give

evidence. Pub. Sts. c. 112, § 25 ; c. 169, §§ 7, 8. Sts. 1882, c. 267; 1883, c. 195 ; 1885, c. 323, § 2; 1891, c. 140 ; 1898, c. 374; 1900, c. 267, § 1. R. L. c. 175, §§ 8–11. *Whitcomb's case,* 120 Mass. 118, 123. *First National Bank of Chicago* v. *Graham,* 175 Mass. 179.

If the plaintiff had summoned witnesses their attendance could not have been enforced, or if voluntarily present, they might have refused to testify, and the committee could not have aided him, and so far as his case depended on their evidence he would have been remediless.

Nevertheless, they were required to grant him a full opportunity to be heard upon the facts, to hear and consider the testimony of such witnesses as he might call, and permit him fully to present his case in such orderly manner as they might direct.

The hearing afforded may be of no value if relevant evidence, when offered, is refused admission, or those who otherwise would testify in behalf of the excluded pupil are prevented from doing so by the action of the committee. How far an administrative board clothed with quasi judicial powers, which has decided upon a definite course of action in a case, will be willing to review its decision, must depend largely upon the sound judgment and sense of justice of its members; but in granting this right to a pupil whom they propose to exclude permanently from the benefit of the public schools, the law presumes that when called upon to reconsider their purpose they will listen patiently to his case as fully as he wishes to present it, so long as such presentation does not extend beyond the legitimate limits of the issue involved. When it appears that a fair trial has been given, and that the pupil has been allowed to present the merits of his cause, mere errors committed in the admission or exclusion of evidence are not enough to make invalid a final adverse decision. *Bishop* v. *Rowley* and *Morrison* v. *Lawrence, ubi supra.*

It was contended by the plaintiff that the controversy between him and the principal arose out of an article derogatory to the latter, published in his father's newspaper, and that his exclusion was caused by the publication of this criticism and not because of inattention to his studies or for want of correct deportment.

After his " indefinite suspension " had been ordered, and remained unmodified, the plaintiff's father asked for a hearing before the committee, and upon this being granted, the plaintiff appeared at the time and place designated by them. The principal of the high school also was present, and by vote of the committee each was permitted to have the assistance of counsel.

The principal was allowed properly to go forward and make a detailed statement in writing of the plaintiff's standing and conduct as a student, and this was followed by an accusation that an article, either incited or written by him, criticising the management of the school, had appeared in a newspaper published by the plaintiff's father, and that upon investigation he had ascertained that the plaintiff had sought to instigate other pupils of the school to write similar articles, and also had urged them to read those already published; and the pupils who had furnished him with this information were present, at his request, at the hearing. Although the school records brought by him, showing the plaintiff's deportment and his rank as a scholar, were neither read, examined, nor put in evidence, it appeared upon cross-examination that pupils were not suspended for deficiencies in their studies, while for eighteen months before his suspension the monthly record of the plaintiff's behavior sent to his father, showed his conduct to be satisfactory.

This testimony of the principal was supplemented by a written statement of the teachers in the school that the plaintiff had sought to undermine the authority of the principal and to incite other pupils to write articles for publication to influence the community against those " working for the good of our school." If to this is added his admission of language used by him when he sent the plaintiff home and told him not to return and " that he had never made any charges before the school committee with reference to the plaintiff's studies or his prior conduct until after the suspension, and until he went before the meeting of the sub-committee which was held for the purpose of formulating charges against the plaintiff and giving reasons for his suspension ", there was evidence from which it might be inferred that his action was taken not for the sole reason that the plaintiff had neglected his studies, or failed to conduct himself properly in school, but also, as stated later in the letter sent by the com-

mittee to the plaintiff's father giving the reasons for their action, because of " his incitement of his fellow pupils to write newspaper articles derogatory of the principal of the high school ", tending " to subvert the authority of the principal and impair the discipline of the school, and was, moreover, such as to warrant his indefinite suspension."

It therefore became vital for the plaintiff, if he was to meet this serious accusation, to show, if possible, not only that the offensive publication was not written or instigated by him, but that he had not incited other pupils to take similar action, or sought to raise a spirit of insubordination in the school, and that his fellow pupils had not given such information to the principal ; and for this purpose he called one of them as a witness to whom, apparently, the principal had referred.

In what followed, the action of the chairman could be found to reflect the attitude of the committee, and might be open to more than one conclusion.   It was plain that much friction had arisen between the plaintiff and the principal, and the disagreement between them had spread, to some extent, to the pupils of the school, and that to permit them to testify, presumably in contradiction of the principal, would tend to weaken his authority, impair his influence, and bring discredit upon the school itself.   And without any intention of taking an unconscientious advantage of the plaintiff, and perhaps not acting with cool deliberation, they took the position that in the sound management of the school, for the interest of the community, they ought not to permit a pupil to be examined on an issue of fact between the principal and the plaintiff, or to contradict him as a witness. Upon being informed that the only testimony which the plaintiff could present upon this part of the charge was that of his fellow students, this ruling was modified, so that " if any of the pupils wished to volunteer a statement in the matter or contradict anything said of them by the principal, they might do so."   If this view is taken want of good faith had not been proved.

Generally in actions of tort at common law intent or motive is material only on the measure of damages.   *Hawes* v. *Knowles*, 114 Mass. 518.   *Rideout* v. *Knox*, 148 Mass. 368, 372.   *Burt* v. *Advertiser Newspaper Co.* 154 Mass. 238, 245.   But, as in this case, it may be an element on which liability for a statutory

tort finally rests, and when it is the subject of inquiry, the issue raised is one of fact and not of law, and often must be ascertained from results. See *Ledrock* v. *Putnam*, 111 Mass. 499.

Before the hearing began, counsel for the principal had stated to the committee the nature of the hearing, and accurately defined their powers and duties when sitting as a trial tribunal, and the presumption, until rebutted by proof, is, that they intended the natural and probable consequences of their action on the rights of the plaintiff.

The witness when called was apparently willing to testify, but after the ruling was announced declined to volunteer, and it could be found that he was prevented from giving evidence, or coerced to remain silent by the action of the committee.

As none of the pupils present offered themselves as witnesses, the legitimate effect of the decision was to cause the exclusion of lawful evidence that might have been·introduced, and that ·was material to the plaintiff's defence, and could not be supplied from any other source. This method of procedure when intelligently adopted by a tribunal charged with an impartial investigation of fact, to be followed by a determination of the rights of the plaintiff, cannot be considered a hearing in the accustomed sense, or to denote an inquiry of a judicial character.

If the course pursued was found to exhibit on their part either prejudice against the plaintiff whose conduct was under investigation, or wilful indifference to his rights, there would be evidence to support an allegation that they were not acting with a desire to meet the full requirements of such a hearing, but intentionally went outside of them for some purpose that whether wrongful or lawful equally resulted in a wrong to him. *Plant* v. *Woods*, 176 Mass. 492, 499. *Squires* v. *Wason Manuf. Co.* 182 Mass. 137, 141. *Wills* v. *Noyes*, 12 Pick. 324, 328. And the adjudication of the committee becomes inconclusive in a suit of this nature. *Bishop* v. *Rowley* and *Morrison* v. *Lawrence*, *ubi supra.*

It therefore became a question for the jury to determine whether in pursuing this course the school committee were actuated by a spirit of judicial fairness, or whether their conduct was susceptible of the other interpretation. *Londy* v. *Driscoll*, 175 Mass. 426, 427.

The distinctions we have discussed must have been fully pointed out and presented in a manner satisfactory to the defendant, for the exceptions state that the case was submitted to the jury under instructions to which no objection was made. *Lane* v. *Old Colony & Fall River Railroad*, 14 Gray, 143, 147. *Townsend* v. *Hargraves*, 118 Mass. 325, 333.

In the opinion of a majority of the court, as no error of law is found, the order must be

*Exceptions overruled.*