COMMONWEALTH *vs.* ANTHONY CAPALBO.

Suffolk.    February 5, 1941. — February 25, 1941.

Present: FIELD, C.J., LUMMUS, QUA, COX, & RONAN, JJ.

*Evidence,* Opinion: expert; Competency; Cumulative. *Witness,* Expert.
*Practice, Criminal,* Exceptions: whether error harmful; New trial.
*Error,* Whether harmful.

The manner in which a person would fall when shot and where the blood
    from the bullet wound would be deposited were proper subjects of
    expert testimony by a medical examiner.
Evidence warranted a finding that a police chemist was qualified to
    testify as an expert on the effect which alcohol, found by him in parts
    of the body of a deceased person, would have had on the deceased;
    and the effect of the alcohol was a proper subject of expert testimony.
No reversible error at a criminal trial was shown by the admission of
    certain testimony, contended by the defendant to have been highly
    prejudicial, which the judge later ruled did not have a proper founda-
    tion, which he thereupon instructed the jury to disregard, and which
    was merely cumulative of other testimony previously admitted with-
    out objection.
No abuse of discretion appeared in the denial of a motion for a new trial
    in a criminal case, based on evidence to impeach the credibility of a
    witness for the Commonwealth and on alleged newly discovered
    evidence upon a material issue.

INDICTMENT, found and returned on June 21, 1938.

The case was tried in the Superior Court before *Collins,* J.,
and in this court was submitted on briefs.

*H. F. Callahan,* for the defendant.

*W. J. Foley,* District Attorney, *& E. M. Sullivan,* Assist-
ant District Attorney, for the Commonwealth.

RONAN, J.    The defendant was tried and convicted in
the Superior Court upon an indictment charging him with
the commission of murder in the second degree and upon
an indictment charging him with carrying a pistol without
a license. . The trial was conducted in accordance with
G. L. (Ter. Ed.) c. 278, §§ 33A–33G, inclusive.    The de-
fendant now raises no question as to his conviction upon
the second indictment.    His contentions are confined to
the first indictment, and that case is here by appeal, with

a summary of the record, a transcript of the evidence, and an assignment of errors.

The deceased, Joseph Perotta, went into a liquor saloon, located on the corner of Winnisimmet and Williams streets, in Chelsea, at about nine o'clock on Sunday evening, May 22, 1938, where he met one James Giordano with whom he had spent several hours on the afternoon of that day in playing a bowling game. Both had drunk a considerable quantity of beer. While in the saloon an argument ensued between Perotta and Giordano. One Rose Capalbo, the daughter of the defendant, while passing the saloon observed that such an argument was taking place and went home and informed her father, the defendant. The latter took a loaded revolver from a bureau drawer and went to the saloon. The defendant told Giordano, who lived with him, to go home and also requested Perotta to go home. The defendant contends that Perotta then made an insulting remark, passed out the side door of the saloon to the street and invited the defendant to come outside, and that Perotta, with a knife in his right hand, commenced to climb the three steps that led from the street to this doorway, making two or three lunges with the knife as he approached the defendant who was standing near the door, when the latter pulled out the revolver from his pocket and shot Perotta, the bullet entering his forehead between the eyebrows and taking a downward course, finally lodging between the back of the skull and the scalp. There was other evidence that the shooting occurred inside the saloon. Perotta slumped down when he was shot. He then was taken to Gilman Place, in the rear of the barroom. There he was discovered by the police who took him to the hospital. He died within four hours. The defendant left the premises immediately after the homicide and was at large until he appeared at the Chelsea police station on the following Wednesday.

It is undisputed that the fatal shot was fired by the defendant and that Perotta died as a result of this bullet wound, but the defendant contends that he shot in self defence as Perotta lunged at him with a knife in his right hand. The medical examiner, who performed an autopsy

and described the course of the bullet and the resulting damage to the brain, testified that the bullet had destroyed a large part of the motor tract and that the immediate effect upon the victim was an instant collapse — inability to walk or move or stand, which would be followed by a flaccid collapse and then a flaccid paralysis which would continue until death; that anything that he held in his hand would drop as the victim would relax and "would crumple"; that the victim would be unable to put his hand into his pocket after he was shot and that, at the time of the shooting, the revolver was held only a matter of inches away from Perotta's face. There was evidence from various police officers who removed Perotta from Gilman Place that he was unconscious; that he had his right hand about one half way in his trousers pocket; that there was a dollar bill in this hand and that his right hand remained in this position until they searched his clothing at the hospital. Some of these officers also testified that there was no blood upon Perotta's right hand. The police made a search of the premises and the adjoining sidewalk and Gilman Place. They discovered upon the Williams Street sidewalk the shell from which the bullet was shot and marks which indicated that the victim had been dragged from the doorway on Williams Street to Gilman Place where he was finally left upon the ground, but they found no knife although they were not then especially looking for such an object. A woman who was in this saloon at the time of the shooting testified that a short time after the shooting she found a knife on the sidewalk near the Williams Street doorway and that it was taken away from her by one Fraser who was employed in the saloon. She testified when the knife was shown to her at the trial that this was a knife that she had seen in the kitchen of the saloon for some time previous to the shooting. There was also evidence that the knife, which had been introduced as an exhibit, had been found by one Basso on Winnisimmet Street in front of premises that adjoined the saloon, but there was no evidence that Perotta travelled to Winnisimmet Street after he was shot or that he ever took a step after the shooting. Whether this knife

was owned by Perotta was the subject of a sharp conflict in the testimony.

The Commonwealth claims that the contention of the defendant that he shot in self defence was a fabrication. It points out that there was no evidence that the defendant had been injured although his revolver was only a matter of inches from Perotta's face when he was shot, that if Perotta had a knife it would have dropped from his grasp when he was shot and would have been found there at once after his body had been removed to Gilman Place. The position of the right hand in the trousers pocket, it contends, shows that, at the time he was shot, Perotta was grasping a dollar bill in this pocket, and that he could not have raised his hand out of the pocket after he was shot, and, furthermore, there was no blood upon the right hand. The weight to be given to these contentions was to be determined by the jury. *Commonwealth* v. *Crowley*, 168 Mass. 121. *Commonwealth* v. *Peterson*, 257 Mass. 473. *Commonwealth* v. *Trippi*, 268 Mass. 227.

The second and third assignments of error are to the admission of testimony of Dr. Brickley, the medical examiner, as to the manner in which the deceased would drop when shot, and where the blood from the bullet wound would be deposited. The ground of objection urged is that these matters were not the subject of expert testimony. The facts upon which the questions purported to be based appeared in the testimony. The witness had performed an autopsy and knew from actual observations what parts of the brain had been lacerated by the bullet and in what direction and where the blood caused by the wound had flowed and where in the body it had been deposited. He also testified as to the amount of blood that would be released by the wound and the rate of its escape. The evidence was competent. The evidence excepted to "related to matters outside the range of common experience" and "pertained to an exact knowledge of the anatomy and the vital organs of a human body and the course of projectiles through it." *Commonwealth* v. *Festo*, 251 Mass. 275, 280. *Commonwealth* v. *Spiropoulos*, 208 Mass. 71, 72. *Com-*

*monwealth* v. *Dorr*, 216 Mass. 314, 317. *Commonwealth* v. *Russ*, 232 Mass. 58, 78. *Commonwealth* v. *Snyder*, 282 Mass. 401, 419. *Commonwealth* v. *Mabey*, 299 Mass. 96.

The fifth assignment of error is to the admission of the testimony of the witness Stratton, who had examined and determined the percentage of alcohol present in the brain, blood and stomach contents of Perotta, that the amount of alcohol found would cause the average normal man of forty-nine years of age to be definitely under the influence of liquor and to manifest some unsteadiness of motion. The witness, since his graduation from college in 1928, had been engaged in biological and chemical research, and since 1934 had been the chemist of the Boston police department working in conjunction with the medical examiners and their associates. He had worked on more than one hundred forty cases for the Boston police department in matters involving blood stains and fibres and various problems relating to toxicology. On many occasions he has qualified and testified in the courts of this Commonwealth as an expert in chemistry and biology. The record does not show that at any time during the trial the defendant questioned his qualifications. Whether the witness possessed the qualifications adequate to enable him to testify as an expert rested in the first instance with the trial judge, and his decision was conclusive unless it appeared upon the evidence to be erroneous as matter of law. *Guinan* v. *Boston Elevated Railway*, 267 Mass. 526, 527. *Commonwealth* v. *Dawn*, 302 Mass. 255, 258. The deceased was forty-nine years of age. The effect that a specified amount of alcohol found in a man's organs and bodily fluids would have upon the steadiness of his gait was a proper subject for expert testimony. The opinions of experts as to the effect a certain amount of alcohol found by an analysis of the blood or urine would have upon a person have been held competent. *State* v. *Duguid*, 50 Ariz. 276. *State* v. *Morkrid*, 286 N. W. 412. *Kuroske* v. *Aetna Life Ins. Co.* 234 Wis. 394. In passing, it is to be observed that the medical examiner had testified without objection that, from the quantity of alcohol that he found

in the body, "in all probability the deceased was unsteady on his feet." *Morrison* v. *Lawrence*, 186 Mass. 456. *Commonwealth* v. *Simpson*, 300 Mass. 45.

There is nothing in the ninth assignment of error to the admission of testimony given before the grand jury by one Perotta, the owner of the saloon. Such evidence tended to contradict his testimony at the trial in reference to the identification of the knife. *Commonwealth* v. *Mead*, 12 Gray, 167. *Commonwealth* v. *Homer*, 235 Mass. 526, 532, 533.

The eleventh assignment of error is to the admission of certain evidence, on cross-examination of the defendant, that tended to show his relations with Mrs. Giordano. This testimony was admitted upon the contention of the Commonwealth that, during the argument in the saloon between James Giordano and Perotta, the latter had made a remark casting a reflection upon Mrs. Giordano; that the defendant learned of this incident and went to the saloon in search of Perotta. The judge ruled that the evidence was competent after the prosecuting officer had stated that he would prove that the defendant had learned that Perotta had made such a remark. The defendant excepted "provided the foundation . . . [was] laid." There is no contention that the prosecuting officer was not acting in good faith or that the Commonwealth did not have the right to prove a motive for the homicide. There was no error in this ruling. *Commonwealth* v. *Feci*, 235 Mass. 562, 567. *Commonwealth* v. *Simpson*, 300 Mass. 45, 58.

The defendant then testified that Mrs. Giordano had borne him a daughter eighteen years ago; that he was living with her as man and wife although her husband was living in the same house but in a different apartment; that he had a joint account with her in a savings bank; that he knew that a certain Italian word casts an aspersion upon a woman's morality but that he did not know before the shooting that Perotta had ever applied the term to Mrs. Giordano on account of the defendant's living with her. At the close of the evidence the judge ruled that the evidence was insufficient to prove that the defendant knew

that the deceased had made any such alleged remark and instructed the jury to disregard such evidence.

The defendant now contends that the nature of this evidence was highly prejudicial to the defendant and could not be eradicated from the minds of the jury. But if the defendant believed that the instruction was not strong enough to counteract the effect of the evidence he should have requested an additional instruction. *Commonwealth v. Damon,* 136 Mass. 441. *Commonwealth v. Enwright,* 259 Mass. 152. The judge had a right to assume that the defendant was satisfied. The defendant did not save any exception to the instruction and, consequently, there is nothing upon which an assignment of error in this respect can be based. The point is not as a matter of right open to him. *Commonwealth v. McDonald,* 264 Mass. 324. *Commonwealth v. Hamel,* 264 Mass. 564. We have, however, examined the whole record in view of the contention made by the defendant's counsel. *Commonwealth v. Chin Kee,* 283 Mass. 248, 256.

The effect of this evidence must not be considered as if it stood alone, but its force must be regarded in conjunction with substantially similar evidence which had been adduced at the trial without any objection of the defendant and in some instances was voluntarily introduced in behalf of the defendant. Early in the trial a lieutenant of police testified that the defendant had told him, soon after his arrest, that he was not married; that Mrs. Giordano was the mother of his daughter Rose; that James Giordano was not his son but that he had "raised him since he was two years old"; that James sometimes called himself Capalbo and sometimes Giordano. A police officer also testified that Rose and James lived in the same family with the defendant and that there was a woman there whose name he did not know. Rose testified that the defendant was her father, and she referred to James Giordano as her brother. James Giordano testified that Perotta during the argument in the barroom had used a certain Italian word which casts a reflection upon a female member of the family in which one lives. He also testified that his father, in 1938,

previous to May was living on the first floor but that he was not living with the rest of the family. The defendant himself testified that he married Mrs. Giordano after the shooting of Perotta. Counsel for the defendant in his opening stated that James Giordano was not the son of the defendant. The evidence now in question did not to any substantial extent go beyond that just narrated, to none of which the defendant offered any objection. In other words, the evidence objected to was in the main merely cumulative of similar evidence which properly remained in the case. It is rarely that the admission or exclusion of cumulative evidence constitutes prejudicial error. *Chandler* v. *Prince*, 217 Mass. 451. *Brown* v. *Wimpenny*, 239 Mass. 278. *Perivoliotis* v. *Eveleth*, 251 Mass. 444. *Jordan* v. *C. I. T. Corp.* 302 Mass. 281. *Kurland* v. *Massachusetts Amusement Corp.* 307 Mass. 131. It must also be assumed that the jury, in compliance with the instruction of the court, disregarded the evidence now in question. *Commonwealth* v. *Cline*, 213 Mass. 225. *Commonwealth* v. *Morrison*, 252 Mass. 116.

The sixteenth assignment of error is grounded upon the refusal of the judge to grant the motion for a new trial. The principal grounds relied upon are that the weather at the time of the homicide was very foggy and not clear and fair as the witnesses stated at the trial; an attack upon the credibility of Rines, a witness for the Commonwealth; the prejudicial character of the evidence already discussed in disposing of the eleventh assignment of error; and newly discovered evidence.

A plan had been introduced at the trial showing in considerable detail the locus outside the saloon premises, including the location of the street light. Photographs showing the inside and outside of the saloon were exhibits at the trial. There was considerable evidence concerning the conditions of light and darkness prevailing at the Williams Street side entrance to the saloon at the time of the homicide. It was for the judge to determine, in view of the evidence introduced upon the hearing upon the motion, what in fact were the conditions of the weather and, if found to be dif-

ferent from those disclosed at the trial, whether such differ-
ence considered alone or in conjunction with the other
matters relied upon in support of the motion was so material
that justice required a new trial.

Rines had testified that while walking along Williams
Street in the vicinity of the side door he heard a shot fired
in the saloon and that later, while standing inside the window
of his home which was across the street, he saw a body fall
through the doorway and land head first upon the stairs.
He saw no one on the stairs with a knife in his hand.  He
testified that Perotta was carried into Gilman Place, and,
upon this phase of the case, the witness was corroborated
in effect by the testimony of Brown, the marks on the side-
walk, and the appearance of Perotta's shoes.  On this state
of the evidence, there would be no error if the judge should
refuse to find that the fog was so heavy that it obstructed
the view of Rines or that he was not entitled to credence.

The newly discovered evidence was the testimony of Mrs.
Di Patto that, as she was walking along Williams Street,
she saw Perotta standing on the sidewalk with a knife in his
right hand and heard him address an insulting name to the
defendant, who was standing on the top step, and heard him
call to the latter to "come out here."  Later, as she was
raising the window in her home, she heard a shot.  She stated
that she never mentioned the incident to anyone until she
told the defendant's wife months after the trial.  She was
the defendant's tenant, and when the police searched her
home the morning after the shooting looking for the defend-
ant and seeking information she told them: "I don't know
nothing."  Some of the issues at the trial were whether
Perotta was shot while he was in the saloon or while he was
on the stairs of the side entrance, and whether the shooting
was in self defence.  We do not know whether the judge
believed Mrs. Di Patto.  There was no error of law if he did
not.  If he believed her, we cannot say that her testimony
had such a compelling force and effect, in view of the great
amount of testimony at the trial upon these issues, that it was
an abuse of sound judicial discretion to deny the motion for
a new trial upon this ground or upon any grounds contained

in the motion. *Commonwealth* v. *Borasky*, 214 Mass. 313. *Commonwealth* v. *Dascalakis*, 246 Mass. 12. *Commonwealth* v. *Devereaux*, 257 Mass. 391. *Commonwealth* v. *Chin Kee*, 283 Mass. 248.

The other assignments of error have been waived. The indictment did not charge a capital offence, *Green* v. *Commonwealth*, 12 Allen, 155; *Commonwealth* v. *Ibrahim*, 184 Mass. 255, and consequently does not come within the practice prescribed by G. L. (Ter. Ed.) c. 278, § 33E, as amended by St. 1939, c. 341. We perceive no error, and the order in each case must be

*Judgment affirmed.*