COMMONWEALTH *vs.* FREDERICK E. BARKER.

SAME *vs.* VINCENT A. CURTO.

Hampden.     January 7, 1942. — February 25, 1942.

Present: FIELD, C.J., QUA, DOLAN, COX, & RONAN, JJ.

*Bribery. Public Officer. Municipal Corporations*, Officers and agents. *Evidence*, Relevancy and materiality, Of course of conduct, Cumulative. *Practice, Criminal*, Mistrial; Exceptions: whether error harmful; New trial; Trial of defendants together; Argument of district attorney. *Error*, Whether harmful.

At the trial of an indictment charging a member of a municipal board with requesting a bribe for the promising of his vote for the issuance of a permit, testimony properly was admitted of conversations be-

tween him and the alleged briber occurring after the issuance of the permit and showing an attempt by him to collect the bribe.

No error nor abuse of discretion was shown in the denial of a motion for a declaration of a mistrial of an indictment because of a certain publication in a newspaper where the record did not disclose that any juror knew of the publication and the trial judge instructed the jury that, if any of them had read it, he should disregard what he had read.

No prejudicial error appeared in a ruling at a criminal trial allowing a question in redirect examination of a witness which sought testimony to the same effect as that previously given by him without objection by the defendant.

Evidence warranted conviction of a member of a municipal board of violation of § 8 of G. L. (Ter. Ed.) c. 268 by requesting a payment of money in consideration of his voting to grant a permit.

No error appeared in the denial of a motion for a new trial of an indictment on the ground that the judge had ordered the indictment tried with an indictment against another; that question might seasonably have been raised before the trial, and no abuse of discretion was shown in ordering the joint trial.

A member of a municipal board of three could be found guilty of accepting a bribe in violation of G. L. (Ter. Ed.) c. 268, § 8, on evidence that he told an applicant for a permit that the only way to get the application granted would be to pay a specified amount of money to another member of the board, and that after the granting of the application the defendant made various demands on the applicant for the money and finally received it.

At the trial of an indictment charging a member of a municipal board of three with accepting a bribe for voting to grant a permit, where there was evidence that the defendant and a second member of the board acted together in seeking the bribe and that the permit was issued, evidence properly was admitted that the permit was issued by order of the two members and that the third member of the board was opposed to granting it and did not vote to grant it.

At a joint trial of two defendants on separate indictments, refusal by the judge to accede to an oral request made after the charge to the jury for further instructions respecting an argument by the district attorney that certain evidence introduced by one of the defendants after the other had rested showed guilt of the other defendant, was not shown to have been error prejudicial to the other defendant in view of repeated instructions which had been given to the jury.

A defendant at a criminal trial is not entitled as of right to raise on a motion for a new trial a question which he could have raised at the trial.

INDICTMENTS, found and returned on September 25, 1939.

The cases were tried before *Collins*, J., and in this court were submitted on briefs.

*A. T. Garvey & G. H. Madsen,* for the defendant Barker.

*J. M. Noonan & J. F. Furcolo,* for the defendant Curto.

*T. F. Moriarty,* District Attorney, *& J. F. Kelly,* Assistant District Attorney, for the Commonwealth.

RONAN, J. Barker and Curto were municipal officers of the city of Springfield and with one Brunton comprised the city property committee which had charge of various public buildings including the municipal auditorium. Barker was convicted of requesting a bribe of $50 from one Feldman in consideration of voting in favor of Feldman's application for the use of the auditorium on January 18, 1939, for a wrestling match, and Curto was convicted of accepting a bribe of $50 from Feldman for voting to grant his application. The cases were tried together and are before this court on appeals, with a summary of the record, a transcript of the evidence, and, in each case, an assignment of errors in accordance with G. L. (Ter. Ed.) c. 278, §§ 33A–33G.

Each indictment charged the defendant with a separate violation of G. L. (Ter. Ed.) c. 268, § 8, which, in so far as here material, provides that "A . . . municipal officer who corruptly requests or accepts a gift or gratuity . . . under an agreement or with an understanding that his vote, opinion or judgment shall be given in any particular manner, or upon a particular side of any question, cause or proceeding, which is or may be by law brought before him in his official capacity," shall be punished by imprisonment or by imprisonment and a fine.

Feldman filed an application on January 5, 1939, for the use of the auditorium for the evening of January 18, 1939, which came before the city property committee at its regular meeting held on the afternoon of January 5, 1939, and, with the assent of the full committee, action thereon was deferred. There was testimony that it was deemed expedient to obtain a report from the police department as to the advisability of permitting the use of the hall for a wrestling match. There was also testimony that Brunton from the beginning was opposed to having the hall used for this purpose and that he was steadfast in his opposition.

Feldman testified that two or three days after this meeting he endeavored to talk with Barker over the telephone but was unable to locate him; that he asked Curto the reason for not acting upon the application and Curto said that, as far as he was concerned, he would vote in favor of the application, but that Barker "was hungry for some money and I [Feldman] had to give him something for it"; that Curto insisted that the only way that the application would be granted was to give Barker $50 for his vote; that subsequently, within a day or two, he met Barker and requested the reason for not granting the application; that Barker told him that it ought to be worth something to get the use of the hall, that one of the performers at the wrestling exhibition was getting a lot of money and that he (Barker) ought to get $50; that Barker said there was considerable opposition to the proposed use of the hall and that it would be worth $50 of Feldman's money "to get him to vote for it"; that he next saw Curto on the same day, and was told by him that the only way he could have the use of the hall was to give $50 to Barker, and that if Feldman would give him (Curto) the $50 he would give it to Barker; that Curto said he did not want anything for himself as he would gladly vote to grant the application; that he again saw Curto and told him that "if that was the only way I could get it I would give him that money"; and that within three or four days he was notified that his application had been granted. The permit was dated January 12, 1939. Feldman further testified that, within a couple of days after January 12, 1939, he met Barker and told him that he would give him the money later; that Barker told him that he could still revoke the permit and that he could use the agitation against it as an excuse for doing so; that Curto told him on January 17, 1939, that he had "better pay him the $50 for Barker was looking for it"; that the witness said that he would give it to him later, and Curto told him "to stop stalling and see that . . . [he] got the money so that . . . [Curto] could have it"; that later on the same day Curto told him that he had better get the money now because Barker had threat-

ened to revoke the permit; and that the witness said that as he had already incurred expense in reference to the wrestling match he could not afford to lose the permit and that he would see that Barker got the $50. He testified that he met Barker on the morning of January 17, 1939, and Barker asked him for $50 which, Barker stated, the witness had promised to give him; that the witness told him that he would get the money, and Barker then stated that if he did not get the money it was not too late to revoke the permit; that on the morning of the date of the match, Curto telephoned to him that "Barker was getting quite hot under the collar, felt he was being double crossed and wanted that money"; that he met Curto on the afternoon of January 18, 1939, and told him that he did not want to give him $50, that he felt "they had a lot of nerve asking for it," and that he was going to go through with the wrestling match; that Curto said "it would be smart for me [the witness] to give him that $50"; and that the witness replied that, with all the expense he had incurred, there was nothing else he could do except to pay the money; and that he then gave Curto $50.

Downey, the superintendent of public buildings, testified that the meetings of the city property committee were held in his office; that he made the records of the meetings; that regular meetings were held on Thursdays practically every week; that the next regular meeting after January 5, 1939, was held on January 19, 1939; that he issued a permit to Feldman on January 12, 1939, in response to the order of Barker, Curto or both; that Brunton was not present at that time; that shortly after the wrestling match, Curto told him that Barker "had better watch his step or he would get into trouble" as Curto "had had to get $50 from Feldman and give it to Barker for the wrestling match."

We now pass to the assignments of error alleged by Barker.

The first and third assignments are based upon the admission of the testimony of Feldman relative to conversations occurring after January 12, 1939, the date of the issuance

of the permit, between Barker and him concerning the payment of $50 to Curto, and to the failure of the judge to strike out this testimony. There was ample evidence that, prior to the issuance of the permit, Barker had requested a bribe of $50 for his vote in granting the permit, and his conversations thereafter could be found by the jury to be attempts to collect this amount in accordance with his request and to show a course of conduct consistent with this request, and could be considered as evidence tending to prove that such a request was in fact made by him with the corrupt intent to sell his vote. *Williams* v. *Woodman,* 8 Pick. 78. *Thayer* v. *Thayer,* 101 Mass. 111. *Ryerson* v. *Abington,* 102 Mass. 526. *Whitney* v. *Leominster,* 136 Mass. 25. *Commonwealth* v. *Bean,* 137 Mass. 570. *Beacon Trust Co.* v. *Wright,* 288 Mass. 1. *Arabia* v. *John Hancock Mutual Life Ins. Co.* 301 Mass. 397. *Conroy* v. *Fall River Herald News Publishing Co.* 306 Mass. 488. *Skolnick* v. *East Boston Savings Bank,* 307 Mass. 1. *People* v. *O'Neil,* 109 N. Y. 251.

The second assignment is to the denial of a motion for a mistrial on account of a publication by a local newspaper, during the trial, of an article which was attached to the motion and which contained the statement that "Barker will be tried later in the session in connection with other indictments." This motion was denied after a hearing. We do not know what evidence, if any, was heard by the judge. There is nothing to show that the article had been read by any juror or that anyone on the panel had any knowledge of it. As far as the record goes the judge may have interrogated the jurors and satisfied himself that they were entirely ignorant of the publication of this article. The defendant in his brief merely contends that newspaper articles do create prejudice and that the publication was highly prejudicial to the defendant. He points to no specific manner in which he was harmed. Indeed, there is nothing whatever to show he was harmed at all. The burden is upon an excepting party to include in the record enough to demonstrate that the ruling of law of which he complains "was positively wrong in a pertinent particular." *Posell* v.

*Herscovitz,* 237 Mass. 513, 516. *Commonwealth* v. *Rivers,* 307 Mass. 225.

The parties were entitled to have the case decided only upon the evidence that was introduced at the trial. It was the duty of the judge to determine whether the rights of the defendant were adversely affected by the publication. Much must be left to the discretion of the trial judge, and his denial of the motion implies a finding that the defendant had not been prejudiced. The action of the judge cannot be said to constitute an abuse of sound judicial discretion. *Commonwealth* v. *Capland,* 254 Mass. 556. *Commonwealth* v. *Friedman,* 256 Mass. 214. *Taylor* v. *Creeley,* 257 Mass. 21. *Commonwealth* v. *Hosman,* 257 Mass. 379, 386. *Claffey* v. *Fenelon,* 263 Mass. 427, 435. *Bruns* v. *Jordan Marsh Co.* 305 Mass. 437, 440. Moreover, the judge, at the request of the defendant's counsel, instructed the jury that if any of them had read newspaper articles concerning the case he should disregard what he had read. The defendant's counsel was apparently satisfied with the instruction and asked for nothing further. There was no evidence that any newspaper articles concerning the trial had come to the attention of the jury. In any event, we must assume that the jury followed the instructions. *Commonwealth* v. *Morrison,* 252 Mass. 116. *Commonwealth* v. *Capalbo,* 308 Mass. 376.

The fourth assignment of error was to permitting Feldman, on redirect examination, to answer in the affirmative the question whether he had made up his mind to expose the defendants. The judge stated that counsel had asked on cross-examination this particular type of question the day before. The record shows not only that Feldman had answered without objection a substantially similar question, immediately before the question now objected to, that he had made up his mind to expose them after he had paid $50 to Curto, but also that he had repeatedly stated, without objection from either defendant, that at or after the time he paid the money to Curto he intended to expose them. The evidence objected to was merely cumulative and the defendant fails to show that he was prejudiced by

the ruling permitting the question to be answered. *Morrison* v. *Lawrence,* 186 Mass. 456. *Chandler* v. *Prince,* 217 Mass. 451. *Brown* v. *Wimpenny,* 239 Mass. 278. *Perivoliotis* v. *Eveleth,* 251 Mass. 444. *Jordan* v. *C. I. T. Corp.* 302 Mass. 281.

The fifth and sixth assignments of error are based upon the refusals of the judge to direct a verdict for the defendant and to grant a new trial. The evidence was ample, if believed, to sustain a finding that Barker solicited a bribe of Feldman in consideration of voting to grant Feldman a permit to use the auditorium. *Commonwealth* v. *Hogan,* 249 Mass. 555. *Commonwealth* v. *McCarthy,* 281 Mass. 253. *Commonwealth* v. *Connolly,* 308 Mass. 481. There was no error in denying the motion for a new trial on the ground that the verdict was against the evidence and the law, and that the defendant was prejudiced by a joint trial with Curto. This last ground could have been seasonably raised at or before the trial if the defendant had so desired, and he was not entitled as of right to have it considered on a motion for a new trial. If the question were open, then whether there should be separate or joint trials was a matter of judicial discretion. There was no abuse of discretion in ordering a joint trial. *Commonwealth* v. *Seeley,* 167 Mass. 163. *Commonwealth* v. *Baldi,* 250 Mass. 528. *Commonwealth* v. *Gallo,* 275 Mass. 320. *Commonwealth* v. *Dawn,* 302 Mass. 255. That there was no error in the denial of the motion on all the other grounds alleged is too clear to warrant further discussion. *Commonwealth* v. *Osman,* 284 Mass. 421. *Commonwealth* v. *Polian,* 288 Mass. 494. *Commonwealth* v. *Capalbo,* 308 Mass. 376.

The first and principal assignment of error by Curto is that the trial judge should have granted his motion to direct the jury to return a verdict of not guilty. He does not contend that the evidence did not warrant the jury in finding that he had received $50 from Feldman, but contends that the evidence showed that he received the money as an agent of Feldman for the purpose of transmitting it to Barker, or that he was the donor of a bribe to Barker, and that there was no evidence that he received the money

for himself under an agreement or with any understanding that he would vote to grant Feldman's application. But there was evidence that each defendant participated in the entire transaction with Feldman, and that the action of each supplemented that of the other and converged toward a common purpose, which was to compel the payment of the money to Curto. Feldman testified that he intended to expose both of them; that he had paid them $50 "For that application"; and that he knew the only thing they were interested in was the money. When asked if Curto requested anything of him he answered: "That was his [Curto's] story." The situation called for careful scrutiny of the evidence. The judge instructed the jury that Curto was not to be found guilty if he accepted the money for Barker, and that he was entitled to an acquittal unless the jury were convinced that he received the money for himself in accordance with an agreement to vote in favor of the permit. It is to be assumed that, in returning their verdict, the jury followed the instructions. *Commonwealth* v. *Cline,* 213 Mass. 225. *Commonwealth* v. *Morrison,* 252 Mass. 116. *Commonwealth* v. *Sorval,* 270 Mass. 319. *Commonwealth* v. *Capalbo,* 308 Mass. 376.

Indeed, there was evidence that before the permit was granted Curto had demanded the payment of $50, and that Feldman told him that he would pay him the money if that was the only way he could obtain the permit. This evidence, if believed, showed the making of a corrupt bargain which preceded the granting of Feldman's application. The conduct thereafter of both Feldman and Curto warrants an inference that they both considered that they had made such a bargain before Curto had voted to grant the application. The jury could disbelieve Curto's story that he wanted the money for Barker and that he had from the beginning made up his mind to vote to grant the application, and could reasonably infer from his insistence in demanding the money from Feldman that he was collecting the money for himself in consideration of his vote in granting the permit, and could further infer that Feldman had this in mind in his dealing with Curto. These inferences

need not be necessary or inevitable; it is enough if they are reasonable and warranted from the established facts, and are of sufficient force to induce the belief and conviction of an ordinary mind seeking to ascertain the truth, that the offence charged has been proved to a moral certainty. The issue of the defendant's guilt was properly submitted to the jury. *Commonwealth* v. *Doherty,* 137 Mass. 245, 247. *Commonwealth* v. *Leach,* 156 Mass. 99. *Commonwealth* v. *Russ,* 232 Mass. 58. *Commonwealth* v. *Wood,* 261 Mass. 458. *Commonwealth* v. *Cooper,* 264 Mass. 368. *Commonwealth* v. *Alba,* 271 Mass. 333. *Commonwealth* v. *Vellucci,* 284 Mass. 443. *Commonwealth* v. *Bader,* 285 Mass. 574. *Commonwealth* v. *O'Brien,* 305 Mass. 393. *Commonwealth* v. *Carter,* 306 Mass. 141. *Commonwealth* v. *Ehrlich,* 308 Mass. 498.

The second and third assignments of error are based upon the admission of testimony by Downey, who attended the meetings of the city property committee and apparently acted as its clerk, that when the application came before the meeting on January 5, 1939, Brunton was opposed to having wrestling matches in the auditorium, and of the testimony of Brunton that he did not vote for the permit. There was evidence that Brunton never voted on the granting of the permit and that he did not know it was granted until he read something about it in a newspaper. The evidence was admissible. Two votes were required for the issuance of the permit. The jury could properly draw the inference that the permit was granted by the two remaining members, Barker and Curto. Neither was there error as alleged in the fourth assignment, which was based upon the refusal of the judge to strike out the testimony of Downey that Barker, Curto or both of them were present when the order was given to him by either or both of them to issue the permit. There was no dispute that the permit was issued on January 12, 1939, and there was no evidence that Brunton had anything whatever to do with its issuance. The circumstances under which the permit was finally issued and the action of both defendants in reference to it were an integral part of the subject matter upon which the jury

was to pass. *Commonwealth* v. *Durkin,* 257 Mass. 426. *Commonwealth* v. *Simpson,* 300 Mass. 45.

The fifth assignment of error[1] is based on the statement made by the district attorney in his closing argument, to the effect that as Barker had denied he got any money from Curto the jury could infer that Curto kept the money for his own vote. Curto rested at the close of the Commonwealth's case, but the defendant Barker did not rest and testified that he received no money from Curto. We assume that the judge could allow such an exception after the completion of the charge. See *Commonwealth* v. *Cabot,* 241 Mass. 131. The closing argument of the Commonwealth does not appear in the record and we do not know what qualifications, if any, to the statement were contained in that argument. When Curto rested, and before Barker began his defence, the judge, in accordance with the request of this defendant's counsel, instructed the jury that the case against Curto was closed in so far as the evidence was concerned, and that the evidence that would be thereafter introduced could be considered only in the case against Barker. During the charge the judge reiterated that the defendants were being tried for separate and distinct offences, and that the statements of one defendant in the absence of the other were not to be considered as evidence against the other. They were told to consider each case separately and to decide it. On the whole, while the judge might properly have instructed the jury to disregard this statement of the district attorney, or have repeated the admonition which he had previously given the jury, yet in view of the instructions and the warning previously given that the jury could

---

[1] This assignment was as follows: "The Superior Court erred in allowing the district attorney to comment on evidence that did not exist in the case of Commonwealth *vs.* Curto and to urge the jury to convict because of such evidence. The district attorney argued that, because Barker said he did not get the money, the jury could well infer that the defendant Curto kept it for his own vote. That testimony was in the companion case of Commonwealth *vs.* Barker but was not in the Curto case. Barker did not testify until after the case of Commonwealth *vs.* Curto had been completed, both the Commonwealth and Curto having rested. Before the arguments to the jury the court had agreed it would instruct the jury on any comments by counsel that applied to one case but not the other and following the charge the specific matter was again brought to the court's attention but the court refused to so instruct the jury and allowed the defendant's exception."— REPORTER.

not consider against Curto any evidence that might be introduced by Barker in putting in his defence after Curto rested, we are of the opinion that the failure to give the instruction to the jury was not reversible error. *Collins* v. *Greeley*, 162 Mass. 273. *Koplan* v. *Boston Gas Light Co.* 177 Mass. 15. *Morrison* v. *Richardson*, 194 Mass. 370. *Commonwealth* v. *Richmond*, 207 Mass. 240. *Commonwealth* v. *Farmer*, 218 Mass. 507. *Mikkelson* v. *Connolly*, 229 Mass. 360. *Betts* v. *Rendle*, 236 Mass. 441. *Dillon* v. *Plimpton*, 239 Mass. 588. *Commonwealth* v. *Dyer*, 243 Mass. 472. *Gilchrist* v. *Boston Elevated Railway*, 272 Mass. 346.

The sixth assignment of error is to the refusal to grant a motion for a new trial. It raised no questions that could not have been raised at the trial, and the defendant was not entitled as of right to raise them for the first time by a motion for a new trial and have the judge consider and decide them. It is plain that the denial of the motion was not error. *Davis* v. *Boston Elevated Railway*, 235 Mass. 482. *Ryan* v. *Hickey*, 240 Mass. 46. *Commonwealth* v. *Gallo*, 275 Mass. 320. *Palma* v. *Racz*, 302 Mass. 249. *Commonwealth* v. *Martin*, 304 Mass. 320. *Commonwealth* v. *Capalbo*, 308 Mass. 376.

The evidence was ample to prove that Barker solicited a bribe and that Curto accepted one, even though one defendant requested and the other accepted the same particular object, i.e., the payment of $50. The solicitation itself constituted an offence separate and independent of the acceptance of the money. *Commonwealth* v. *Hogan*, 249 Mass. 555. *Commonwealth* v. *Martin*, 304 Mass. 320. *People* v. *Gibson*, 191 N. Y. 227. *People* v. *Clougher*, 246 N. Y. 106.

*Judgments affirmed.*