COMMONWEALTH *vs.* PHILIP R. BELLINO & another.

Essex.      December 2, 30, 1946. — January 8, 1947.

Present: FIELD, C.J., LUMMUS, QUA, DOLAN, & RONAN, JJ.

*Witness*, Expert. *Constitutional Law*, Trial by jury, Ex post facto law. *Jury and Jurors*. *Practice, Criminal*, Mistrial, Judicial discretion, Appeal with assignment of errors, Capital case, New trial.

A finding by a judge presiding at a trial for murder of a man shot in the back when he was not wearing a shirt, that the evidence showed that a medical examiner was qualified to state his opinion as an expert witness that there was powder in and about the wound and that the muzzle of the lethal weapon had been directly on the skin of the murdered man, was warranted although it did not appear that the witness ever had seen a wound from a bullet fired at close range that had not passed through clothing.

Conduct of a capital trial pursuant to § 26B, inserted in G. L. (Ter. Ed.) c. 234 by St. 1945, c. 428, § 1, violates no provision of the Declaration of Rights for the preservation of trial by jury.

Section 26B, inserted in G. L. (Ter. Ed.) c. 234 by St. 1945, c. 428, § 1, as applied at a trial for an alleged murder committed before its effective date, was not an ex post facto law forbidden by art. 1, § 10, of the Federal Constitution.

There was no abuse of discretion nor error in denial of a motion by the defendant at a murder trial for a declaration of mistrial on the ground that, although a record of his conviction of robbery had been excluded because exceptions with respect thereto were still pending, he had been prejudiced by a previous admission in evidence, as a foundation for the introduction of such record, of testimony by him in cross-examination in which he had admitted that he was the man who had been charged with and found guilty of the robbery, the judge later having instructed the jury to disregard all such testimony.

General Laws (Ter. Ed.) c. 278, § 33E, as amended by St. 1939, c. 341, does not require this court to review all questions of evidence and of procedure at the trial as to which exceptions have not been duly saved, preserved, and prosecuted, in order that this court may ascertain whether somewhere some successful objection might have been taken and prosecuted but was not: it is still the duty of defendants who wish to preserve points of law to take seasonable exceptions and to file adequate assignments of error according to the procedure provided for in §§ 33A–33G.

INDICTMENT, found and returned on January 17, 1946.

The indictment was tried before *Hurley, J.*

*J. W. Eastman*, (*A. N. Illman, M. E. Viola & A. R. Shrigley* with him,) for the defendants.

*H. A. Cregg*, District Attorney, (*J. J. Ryan, Jr.*, Assistant District Attorney, with him,) for the Commonwealth.

QUA, J. Philip R. Bellino and Edward F. Gertsen were jointly indicted for the murder of Robert Williams at Lynn on August 7, 1945. Upon trial, both were found guilty in the first degree, and both have been sentenced to death.

The killing occurred in the nighttime on what is known as the Lynn marshes. The victim, the two defendants, and one Mantia, who pleaded guilty to an indictment as an accessory after the fact, went to the locality in a taxicab. While Mantia remained in the taxicab with the driver, Williams and the two defendants proceeded on foot some distance away from the road and out on the marsh, where the defendant Bellino shot Williams in the back. The shirt worn by the deceased was found beside the body. There was no bullet hole in it. All the evidence, including the testimony of the two defendants, was to the effect that the shirt had been taken off before the shooting, although there was a dispute as to the circumstances in which it had been taken off.

It was the contention of the Commonwealth that the two defendants had enticed Williams out upon the marsh for the purpose of killing him for the reason that they feared that Williams would give information to the police about a "hold-up" in New Hampshire a few days before in which the defendants had taken part and in which a man had been shot. It was the contention of the defendants that they had reluctantly gone with Williams on the marsh to look for a "hot" number plate that he had left there; that while they were there an altercation arose; that Williams attacked the defendants and shot at them; and that thereupon Bellino shot Williams in self defence.

1. The medical examiner, called by the Commonwealth, testified that there was in the middle of the back of the deceased a small bullet wound; that "there was very little powder marks outside but there was a ring which could have been made by the muzzle . . . or the jacket of a gun";

that "Beneath the skin was this fairly wide cavity which was blackened and filled pretty much with burnt powder . . ."; that "there was quite a cavity below the skin which was blackened and covered with burnt powder fragments"; that the powder marks on the outside were "just speckles"; that the ring was "interrupted" and about a half inch in diameter; and that there was very little powder on the skin. Thereafter, subject to exception, the witness was allowed to testify that there was at least some powder on the skin about the wound; that the black of the powder was underneath the skin; and that in his opinion the muzzle of "the gun was directly on the skin."

The defendants assign error in that the medical examiner was not sufficiently qualified as an expert to testify that the marks in or about the wound were caused by powder or that the muzzle of the gun was directly on the skin of the deceased. Bearing on qualification, there was evidence that the witness had been a practising physician, specializing in surgery; that he had been a medical examiner for fifteen years; that he had operated perhaps three times on persons with gun shot wounds, including the type inflicted at close range and the type inflicted at long range; that as medical examiner he had looked at quite a number — about fifteen — bodies where death had been caused by bullet or shot gun wounds, of which about fourteen were bullet wounds; that he believed about eight of these were from bullets fired at close range, all of which, however, were fired through clothing; that he had examined, he should say, six bullet wounds in a nude part of the body, some of these being in the head; but that he had never examined a body where the bullet entered the back of an individual without any clothing.

The defendants argue that the witness was not qualified because it did not appear that he had ever seen a wound from a bullet fired at close range that had not passed through clothing. Assuming that the presence or absence of clothing might affect the appearance of a wound from a bullet fired at close range, we think it clear, nevertheless, that the professional experience of the witness, particularly with respect

to wounds from bullets, both those fired at long range and those fired at short range, would place him in a better position than the average juryman to form conclusions whether the "speckles" observed by him outside the wound and the black appearance under the skin were due to powder and as to the position of the gun when the bullet was fired. *Commonwealth* v. *Rogers*, 7 Met. 500, 504–505. *Commonwealth* v. *Sturtivant*, 117 Mass. 122. A witness's training and experience may well qualify him to give an opinion in reference to a problem which he has never before encountered in precisely the same form. *Hardiman* v. *Brown*, 162 Mass. 585. The conclusion of the trial judge that a witness is competent to express an opinion upon a particular matter can be disturbed only where there is no evidence to warrant that conclusion. *Commonwealth* v. *Spencer*, 212 Mass. 438, 448. *Guinan* v. *Boston Elevated Railway*, 267 Mass. 526. *Corrao* v. *Sears, Roebuck & Co.* 298 Mass. 23, 26. *Commonwealth* v. *Dawn*, 302 Mass. 255, 258. *Commonwealth* v. *Capalbo*, 308 Mass. 376, 380. There was no error in allowing the medical examiner to testify as he did.

2. The defendants assign error in that at the beginning of the trial the judge ordered a jury of fourteen members to be empanelled, and at the time of the final submission of the case to the jury he discharged two of those originally empanelled and submitted the case to the remaining twelve, all in accordance with G. L. (Ter. Ed.) c. 234, § 26B, inserted by St. 1945, c. 428, § 1. The defendants contend that the procedure under this statute has deprived them of the right of trial by jury as secured to them by art. 12 of the Declaration of Rights. See also art. 15. They further contend that this statute, effective after the alleged commission of the crime for which they were indicted, is as to them an ex post facto law which art. 1, § 10, of the Constitution of the United States forbids any State to pass.

Section 26B reads as follows: "In a civil case, or in a criminal case, including a capital case, to be tried with a jury in the superior court which in the opinion of the court is likely to be protracted, the court may so certify and may order impanelled a jury of not exceeding fourteen members

and the court shall have jurisdiction to try the case with such jury subject to the following provisions of this section. If at the time of the final submission of the case by the court to the jury more than twelve members of the jury who have heard the whole case are alive and not incapacitated or disqualified, the court shall direct the clerk to place the names of all of the remaining jurors, except the foreman, in a box and draw the names of a sufficient number to reduce the jury to twelve members, and the court shall thereupon discharge the jurors whose names are so drawn, and the court shall have jurisdiction to receive the verdict of the twelve remaining members of the jury whose names have not been so drawn and shall have jurisdiction to render judgment in said case."

We see nothing in this statute that contravenes the provisions of the Declaration of Rights for the preservation of trial by jury. Undoubtedly it was intended that the substance of "this method of procedure" as practised when the Constitution was adopted should "be held sacred" (art. 15). The substance of the right to be tried by jury consists of those elements in that method of trial which tend to protect the citizen against arbitrary power and to ensure to him that issues of fact shall be determined by the composite judgment of a fairly numerous and representative body of impartial residents of the county selected at large rather than by the judgment of one or of a small number of single individuals who may be subject to peculiar prejudices or whose station and personal experiences in life may have failed to provide them with sufficient understanding of the conditions and circumstances in which the parties acted. Whatever tends in any appreciable degree to impair the essentials of the right must be struck down. But it has always been understood that the constitutional declaration of the right to trial by jury, like other constitutional declarations of right, was the enunciation of a broad, living principle capable of reasonable adaptation to a constantly changing society and not a barren congealing into rigidity of existing forms, which, with the alteration of time and circumstance, might even become clogs upon the exercise of the right itself.

In *Commonwealth* v. *Dorsey,* 103 Mass. 412, at page 418, this court said, "But the method of selecting jurors is left by the Constitution to be regulated by legislative enactments; and these may be modified from time to time as the legislature shall think proper." And again on page 419, this court said, "Many changes have been made by legislative acts in respect to the qualifications of jurors, the methods of selecting and summoning them, and of forming a panel, which differ materially from the ancient practice, and it has not been supposed that the Constitution was violated by such provisions." The validity of this reasoning has been recognized in other instances where enactments affecting in various ways the operation of the jury system have been held valid as not interfering with the fundamental right. *Commonwealth* v. *Worcester,* 3 Pick. 462, 471–472. *Jones* v. *Robbins,* 8 Gray, 329. *Holmes* v. *Hunt,* 122 Mass. 505, 516. *Foster* v. *Morse,* 132 Mass. 354. *Peirson* v. *Boston Elevated Railway,* 191 Mass. 223, 230. *Commonwealth* v. *Wong Chung,* 186 Mass. 231, 234. *Mead* v. *Cutler,* 194 Mass. 277, 279. *Bothwell* v. *Boston Elevated Railway,* 215 Mass. 467, 472. *Farnham* v. *Lenox Motor Car Co.* 229 Mass. 478, 481. *H. K. Webster Co.* v. *Mann,* 269 Mass. 381, 385. *Commonwealth* v. *Snow,* 269 Mass. 598, 605–607. *Karlowski* v. *Kissock,* 275 Mass. 180. *Fratantonio* v. *Atlantic Refining Co.* 297 Mass. 21. See *Commonwealth* v. *Dailey,* 12 Cush. 80; *Opinion of the Justices,* 237 Mass. 591; *Commonwealth* v. *Rowe,* 257 Mass. 172.

There is nothing in § 26B that impairs the fundamental constitutional right. There has been no change in the making up of the jury lists. All members of the particular panel are still drawn by lot as before. The jurors who are to be discharged are selected by lot. When the section was enacted, the defendants' right of peremptory challenge was extended to all fourteen men drawn. G. L. (Ter. Ed.) c. 234, § 29, as appearing in St. 1945, c. 428, § 2. Impartiality is not affected. The verdict is still rendered by twelve men acting unanimously. All fourteen originally drawn have been duly sworn, have heard the entire trial, and have listened under the sense of responsibility that results from

the knowledge by each that by the great weight of probability he would not be discharged but would ultimately have to pass upon the guilt or innocence of the defendants. There was no appreciable dilution of responsibility. We see nothing of consequence in the fact that during the trial fourteen men instead of twelve may have discussed among themselves various aspects of the case, and that remarks of those who subsequently were discharged may have made some impression upon the twelve that remained. Neither do we think it important that the foreman was not subject to discharge. When projected against the background of the fundamental right intended to be preserved by the Constitution, the statutory changes are seen to be comparatively trifling and in no way an impairment of the fundamental right.

It is true that the Supreme Court of the United States seems to have taken, at one time at least, a more rigid view of the nature of the constitutional right to trial by jury under the wording of the Seventh Amendment to the Constitution of the United States than this court has been inclined to take of the nature of the rights secured by our own Declaration of Rights. See *Slocum* v. *New York Life Ins. Co.* 228 U. S. 364; *Minneapolis & St. Louis Railroad* v. *Bombolis*, 241 U. S. 211; *Patton* v. *United States*, 281 U. S. 276; *Aetna Ins. Co.* v. *Kennedy*, 301 U. S. 389, 394; *Bothwell* v. *Boston Elevated Railway*, 215 Mass. 467, 477. But see also *Baltimore & Carolina Line, Inc.* v. *Redman*, 295 U. S. 654; *Berry* v. *United States*, 312 U. S. 450; and *Galloway* v. *United States*, 319 U. S. 372, 392, 394. Whatever view that court may now take, the Sixth and Seventh amendments have never been held to extend so far as to control the action of the States. There are many authorities that they do not. *Twining* v. *New Jersey*, 211 U. S. 78, 98. *Minneapolis & St. Louis Railroad* v. *Bombolis*, 241 U. S. 211. *Snyder* v. *Massachusetts*, 291 U. S. 97, 105. *Brown* v. *Mississippi*, 297 U. S. 278, 285. *Palko* v. *Connecticut*, 302 U. S. 319, 322–326. *Betts* v. *Brady*, 316 U. S. 455, 461–462. The wording of these amendments seems inappropriate to such an extension.

Section 26B is not an ex post facto law forbidden by art.

1, § 10, of the Constitution of the United States. It creates no new crime. It does not alter the nature of an existing crime. It takes away no defence. It does not change or increase the penalty. *Beazell* v. *Ohio*, 269 U. S. 167. *Kring* v. *Missouri*, 107 U. S. 221. *Thompson* v. *Utah*, 170, U. S. 343. *Thompson* v. *Missouri*, 171 U. S. 380. It presents none of the aspects which characterize an ex post facto law. It does no more than amend the mechanics of trial in a manner in no way harmful to the accused. *Commonwealth* v. *Phillips*, 11 Pick. 28, 31–32. *Commonwealth* v. *McDonough*, 13 Allen, 581. *Commonwealth* v. *Brown*, 121 Mass. 69, 78–79. *Murphy* v. *Commonwealth*, 172 Mass. 264, 269. *Commonwealth* v. *Kelley*, 184 Mass. 320, 324–325. *Commonwealth* v. *Phelps*, 210 Mass. 78.

Section 26B was obviously enacted to avoid the difficulty which has occasionally arisen when during the course of a long and expensive trial a juror dies or becomes incapacitated and an entire new trial becomes necessary. It is a reasonable provision in the public interest. It deprives no one of any right. Similar statutes have been held valid in other jurisdictions. *People* v. *Peete*, 54 Cal. App. 333, 367. *State* v. *Breedlove*, 199 La. 965. *State* v. *Dolbow*, 117 N. J. L. 560, 563–568. *People* v. *Mitchell*, 266 N. Y. 15. *State* v. *Dalton*, 206 N. C. 507, 510–513. *Robinson* v. *United States*, 144 Fed. (2d) 392, 397. *American Tobacco Co.* v. *United States*, 147 Fed. (2d) 93, certiorari granted, limited to another point, 324 U. S. 836, rehearing denied 324 U. S. 891. There was no error in conducting the trial in accordance with the statute.

3. The defendant Gertsen assigns error in the denial by the judge of a motion made by Gertsen shortly before he rested his defence that the judge order a mistrial on the ground that this defendant would be prejudiced by a part of his cross-examination by the district attorney at an earlier stage of the trial wherein the district attorney, in endeavoring to lay a foundation for the introduction in evidence, to affect the credibility of Gertsen as a witness, of a record of his conviction of the crime of robbing one Oxman and others on September 24, 1944, had asked him whether he was the

same Edward Gertsen against whom the charge had been made that on that day he did rob and steal various sums of money from said Oxman and others named, and whether he was the same Gertsen who had been found guilty thereon of robbery while armed and sentenced to prison therefor. Gertsen answered in the affirmative. Later in the trial, when the district attorney offered the record of conviction for robbery in evidence, this defendant through his attorney objected to it on the ground that, although this defendant was then, at the time of the trial of this present case, actually serving the prison sentence imposed upon him for the robbery referred to in the record offered, yet the record of his "conviction" was not competent, since a bill of exceptions was still pending in the robbery case which had not been passed upon by the judge who had presided at the trial of that case. The offered record was excluded on that ground. Thereupon Gertsen through his counsel made the motion now in question.

It is provided by G. L. (Ter. Ed.) c. 279, § 4, as appearing in St. 1935, c. 437, § 3, that "Sentence shall be imposed upon conviction of a crime," with an exception not here material, "although exceptions have been alleged or an appeal taken"; and that where the crime is not punishable by death, "the reservation, filing or allowance of exceptions or the entry of an appeal shall not stay the execution of the sentence unless the justice imposing it, or a justice of the supreme judicial court, files a certificate that in his opinion there is reasonable doubt whether the judgment should stand . . .." It is provided by G. L. (Ter. Ed.) c. 233, § 21, that "The conviction of a witness of a crime may be shown to affect his credibility . . ." with exceptions that need not be here stated. The defendant Gertsen contends that a sentence imposed in accordance with c. 279, § 4, and not stayed, but where exceptions are still pending, is not a "conviction" which may be shown under c. 233, § 21, to affect the credibility of the defendant as a witness in another case. See *Boston* v. *Santosuosso*, 307 Mass. 302, 330–331.

The present case does not require a decision of this question. The record of the sentence for robbery was not ad-

mitted. Gertsen's motion was therefore directed entirely to the cross-examination by which the district attorney sought to identify Gertsen as the person sentenced in order to lay a foundation for the introduction of the record later. See *Commonwealth* v. *Sullivan,* 150 Mass. 315, 317. But the cross-examination may well have been incompetent if the record of the sentence was incompetent. *Commonwealth* v. *Walsh,* 196 Mass. 369. *Commonwealth* v. *Danton,* 243 Mass. 552. *Commonwealth* v. *Sheppard,* 313 Mass. 590, 608. Compare *Commonwealth* v. *Fortier,* 258 Mass. 98. The record in the present case leaves it exceedingly doubtful whether Gertsen saved any exception to this cross-examination. It would seem that he deferred taking exception until the record of the conviction should be offered. Language of the judge at a later point in the record seems to indicate that he did not understand that an exception had been taken to the cross-examination. But if we assume in Gertsen's favor that he did save an exception to the cross-examination, nevertheless his assignment of error is directed solely to the denial of his motion that the judge order a mistrial. Where a case is tried, as this was, under the procedure provided by G. L. (Ter. Ed.) c. 278, §§ 33A–33G, not only must the defendant seasonably save his exceptions, but also his rights on appeal are limited to a consideration of the errors assigned. § 33B. *Commonwealth* v. *Gray,* 314 Mass. 96, 102. § 33D. *Commonwealth* v. *McDonald,* 264 Mass. 324, 336. *Commonwealth* v. *Polian,* 288 Mass. 494, 496–497. *Commonwealth* v. *Gale,* 317 Mass. 274, 277. *Commonwealth* v. *Noxon,* 319 Mass. 495, 542. This statement, it is true, is subject to some qualification in capital cases because of the second paragraph of G. L. (Ter. Ed.) c. 278, § 33E, as inserted by St. 1939, c. 341. *Commonwealth* v. *Gricus,* 317 Mass. 403, 404. We shall deal with this statute later in this opinion. There was no error in denying the motion for a mistrial. That motion was addressed to the sound discretion of the judge. *Commonwealth* v. *Cronin,* 257 Mass. 535. *Curley* v. *Boston Herald-Traveler Corp.* 314 Mass. 31. *Shea* v. *D. & N. Motor Transportation Co.* 316 Mass. 553, 555. The judge was not required to grant a mis-

trial merely because at an earlier stage of the trial some evidence of questionable competency may have crept in. If he were so required, it would be almost impossible to conduct any difficult and hard fought case to a final verdict. The defendant Gertsen could have saved any rights he might have had as to such evidence by assignment of error following an exception seasonably taken as provided by the statute.

Moreover, the judge not only excluded the record of conviction but he also told the jury unequivocally to disregard the question to Gertsen in cross-examination involving the indictment for the robbery of Oxman and others and Gertsen's answer that he was the man referred to in that indictment — "all that testimony," and to consider that it was never in the case, just as the record itself was being excluded on the ground that a bill of exceptions had been filed in that case and that the case was still alive "and consequently should not be considered by" the jury. *Commonwealth* v. *Ham,* 150 Mass. 122, 124. *Commonwealth* v. *Cline,* 213 Mass. 225, 227. *Commonwealth* v. *Morrison,* 252 Mass. 116, 125. *Commonwealth* v. *Capalbo,* 308 Mass. 376, 381–382. *Berlandi* v. *Commonwealth,* 314 Mass. 424, 452. *Shea* v. *D. & N. Motor Transportation Co.* 316 Mass. 553, 555, and cases cited. There is nothing in the case to suggest that the jury did not follow this instruction. We find no error in the denial of the motion to declare a mistrial.

We have dealt specifically with all assignments of error that have been argued. We have also considered more broadly the whole case upon the law and the evidence, as we are enjoined to do by G. L. (Ter. Ed.) c. 278, § 33E, as amended by St. 1939, c. 341, and as interpreted in *Commonwealth* v. *Gricus,* 317 Mass. 403, 406–407. That statute, however, does not require us to review all questions of evidence and of procedure at the trial to which exceptions have not been duly saved, preserved, and prosecuted in order that we may ascertain whether somewhere some successful objection might have been taken and prosecuted but was not. To construe the statute otherwise would be equivalent to taking capital cases altogether out of the operation of c. 278,

§§ 33A–33G, although it was plainly intended that those sections should apply to capital cases. It would impose an almost impossible task upon the trial judge. It is still the duty of defendants who wish to preserve points of law to take seasonable exceptions and to file adequate assignments of error according to the procedure provided for in those sections. This court can order a new trial under § 33E, as amended, only "if satisfied" that because of error of law or of fact the verdict is a miscarriage of justice, or where because of newly discovered evidence or for some other reason justice requires a new trial. In this case the defendants have been fully and fairly tried, the verdict is not a miscarriage of justice, and justice does not require a new trial for any reason.

*Judgment affirmed as to each defendant.*